## WOODWARD v. WOODWARD.

1. JUDGMENTS—LIEN—REVIVAL.—Under the statute governing the lien of judgments obtained in 1880, a judgment had a lien for ten years, with the right to revive it at any time within the ten years, or within three years thereafter, and if so revived, its former lien was continued for a further period of ten years, this renewed lien dating back to the day when the judgment was first entered, as between the parties and other judgment creditors.

2. IBID.—IBID.—IBID.—PURCHASER.—But where a year intervened between the expiration of the first ten years and the revival of the judgment, and during that year a tract of land was *bona fide* conveyed by the judgment debtor for value, the purchaser took this land freed from the lien which was afterwards revived, and by its revival given force and effect as to other parties from the date of the former recovery.

MR. CHIEF JUSTICE MCIVER and MR. JUSTICE POPE concurred in the result only.

Before WITHERSPOON, J., Aiken, April, 1892.

The opinion states the case.

*Messrs. Henderson Bros.*, for appellant.

*Messrs. Croft & Chafee*, contra.

May 20, 1893. The opinion of the court was delivered by

MR. JUSTICE McGOWAN. Joshua Madison Woodward died intestate in 1889, and this action was instituted by his heirs to partition his estate. He was seized of an undivided half interest in a certain tract of land, his brother, D. Hagood Woodward, being seized of the other moiety thereof.

It seems that the rights of all the parties have been adjusted, except the conflicting claims of D. Hagood Woodward on the one part, and George W. Croft and S. M. Meyers on the other part, as to the interest in the share of one of the heirs of the estate, viz: J. L. Woodward, against whom Meyers and Marcus had a judgment, which was entered on October 6, 1880, upon which execution was issued and returned *nulla bona* within three days thereafter. Another execution was issued on October 16, 1882, and returned *nulla bona* on July 20, 1885. This judgment was revived by order of Judge Wallace on October 9, 1891, so as to have "the force, form and effect of the former recovery." Accordingly, under this judgment thus revived, the interest of the said judgment debtor, J. L. Woodward, was duly sold and conveyed by the sheriff of Aiken County, on salesday in January, 1892, to G. W. Croft and S. H. Meyer, who claim the interest of the said judgment debtor in the land by virtue of the sheriff's deed. This claim of title was contested by D. Hagood Woodward, a brother of the judgment debtor, who claims that he has title to the said land by virtue of a deed of conveyance from his brother, the judgment debtor, bearing date August 18, 1891. Under this state of facts the question was whether the alienee of the judgment debtor should prevail against the sheriff's deed, for the reason that the debtor sold and conveyed the land in the interval of time between October 5, 1890, when the ten year lien on the judgment expired, and October 9, 1891, when the judgment was "revived;" upon the ground, as insisted, that during that interval of time there was no active living lien, which authorized a levy and sale by the sheriff.

His honor, Judge Witherspoon, held as follows: (1) That the judgment obtained October 5, 1880, by Meyers & Marcus against Joshua L. Woodward created a lien from the date of its entry for the period of thirteen years; (2) That the defendants, G. W. Croft and S. H. Meyers, as purchasers at sheriff's sale under said judgment, acquired the undivided interest of Joshua L. Woodward in the real estate sought to be partitioned in the above entitled action; (3) That against the aforesaid judgment the judgment debtor, Joshua L. Woodward, is entitled to the homestead exemption as provided under the Constitution of 1868."

From this judgment D. Hagood Woodward appeals to this court on the following grounds: I. That his honor erred in holding as matter of law, "that the judgment obtained October 5, 1880, by Meyers & Marcus against Joshua L. Woodward created a lien from the date of the entry for the period of thirteen years;" whereas he should have held that said judgment only created a lien for ten years from such entry. II. That his honor erred in finding as a matter of law, "that the defendants, G. W. Croft and S. H. Meyers, as purchasers at the sheriff's sale under said judgment, acquired the undivided interest of J. L. Woodward in the real estate sought to be partitioned;" whereas he should have held that the defendant, D. Hagood Woodward, acquired a valid title to said land by virtue of his deed from J. L. Woodward, when said judgment had lost its lien. III. That his honor erred in not finding as matter of law that the undivided interest of J. L. Woodward in the land in question claimed by Joshua L. Woodward, and deeded by him to D. Hagood Woodward on August 18, 1891, was then exempt as the "homestead" exemption of Joshua L. Woodward, and as such passed under his deed to his brother, and was not subject to attachment, levy and sale. IV. That his honor erred as matter of law in declaring as unconstitutional that portion of the homestead act of December 24, 1880, which applied its provisions of exemption to any judgment obtained upon any right of action arising subsequent to the ratification of the Constitution of the State.

Section 310 of the Code declares that "final judgments entered

in any court of record in this State subsequent to the 25th day of November, 1873, shall constitute a lien upon the real estate of the judgment debtor in the counties where the same are entered, for a period of ten years from the date of entry of such judgments. * * * Provided, however, That the plaintiff in such judgments may at any time in three years after the active energy has expired revive the judgment with like lien as in the original, for a like period, by service of a summons on the debtor, as provided by law, requiring him to show cause, if any he can, at the next term of the court for his county, why such judgment should not be revived; and if no good cause be shown to the contrary, then it shall be decreed that such judgment is revived according to the force, form and effect of the former recovery,'' &c. This provision of law, especially the peculiar proviso, has given rise to some novel questions. This court has had occasion to interpret it in some particulars, but new questions still arise.

In the case of *King* v. *Belcher*, 30 S. C., 381, it was held, that subdivision 2 of the amending act of 1885 did not have retrospective effect, so as to repeal the proviso of the section as to judgments entered after 1873 and before 1885. But as to all such judgments, the plaintiff might revive at any time within the three years of grace allowed. In the case of *Ex parte Witte Brothers, in re Latham* v. *Moore*, 32 S. C., 226, it was held, that the plaintiff might revive his judgment during the running of the original ten years, with the effect, not of creating a new and independent judgment, but of reviving an old one, with a like lien of ten years; and this revived lien, having been created before the expiration of the first ten years, of course connected with it, giving a continuous and unbroken lien during the new life of the revived judgment.

As we understand it, the summary proceedings to revive a judgment is in the nature of a *scire facias*, which, it is well understood, is not a new suit, but the continuation of an old one. (See Freeman on Judgments, sections 343 and 344.) The authority to issue an execution on a revived judgment is based on the original judgment, which, being revived, retains its relative rank as to other liens. It is, therefore, clear, that as to

the original parties to the judgment, the plaintiffs in the judgment had a lien upon all the property of the judgment debtor then owned or to be thereafter acquired by him, from the date of the original judgment, October 5, 1880, to the expiration of the original lien of ten years (1890); that they had the right to revive at any time within the original ten years and the three years additional, with the effect of creating a revived lien with like effect as in the original and for a like period, which lien they still have upon all the real estate of the defendant in execution down to the present time.

Conceding this, however, it is claimed that the case at bar raises a new question, which is now for the first time before this court: that this is not a case between the original parties to the judgment, like that of *Ex parte Witte Brothers*, *supra*, but that the rights of a third party has intervened; that D. Hagood Woodward purchased the property in question from the judgment debtor on August 18, 1891, during the break in the lien from October, 1890, to the revival of the judgment on October 9, 1891; and that as to such purchase by a stranger to the record, the lien of the revived judgment could not relate back to the time of such purchase, so as to avoid the title of the purchaser for value. This is the precise point of the case, and is truly a new question in this State. The principle involved has been much discussed elsewhere. The cases upon the subject are not entirely in accord. But as we think the weight of authority, upon the facts as stated, supports the claim of the *bona fide* purchaser without notice, after the active energy of the judgment has been lost and before revival.

Mr. Freeman, at section 379, says a judgment may, through various circumstances, seem to be no longer of any force or effect, and may afterwards, by virtue of some judicial proceedings, be restored to its former condition. From its inseparable connection with the judgment, the lien may seem first to lose and then to regain its vitality. The restoration of the judgment and of its lien are always subject to the rights acquired during their temporary suspension. The same distinguished author, at page 381 of his book on Judgments, says: "The vacation of a judgment by order of the court, like its extinguishment by

the operation of a forthcoming bond, leaves the judgment debtor at liberty to dispose of and encumber his real estate, as if the judgment had never been rendered.    Upon a reversal of the order of vacation, the judgment creditor is restored to all his rights, except so far only that his restoration can not prejudice persons not parties to the suit, in relation to any interest they have acquired during the vacation.  ⸱ But liens existing in subordination to that of the judgment at the date of its vacation will occupy a like subordinate position after its restoration. "When the order vacating a judgment is set aside, the lien is revived in all its pristine rigor, and is as effective as before the order was made, except as to rights acquired in the meantime. *  *  *  So if a judgment be satisfied by the sale of property, the vacation of the sale revives the judgment, so that it has precedence over junior judgment liens, which accrued prior to the vacating of the sale.    Generally the revival of a judgment operates prospectively only, and does not impair conveyances made prior to such revival"—citing *King* v. *Harris*, 34 N. Y., 330, and *Coombs* v. *Jordan*, 3 Bland Ch., 284 (22 Am. Dec., 236).

This latter case cited was well and fully considered, giving the history of liens upon real estate from the earliest times. Among other things, he condemned the doctrine we are considering as follows: "And, therefore, if a plaintiff, after the time allowed for suing out execution, revives his judgment, his attendant lien can only operate prospectively, and not with any retrospective effect, so as to overreach any intermediate encumbrances or alienations; for although, as between the parties to the judgment when revived, it may be permitted to operate as a lien upon the property of the defendant from its date; yet as a legal relation is never suffered to work a wrong, it can not be permitted to bind the property as against any intermediate encumbrancer or *bona fide* purchaser without notice, but from the date of its revival" (citing a number of authorities). "And so, too, as to deeds, to the validity of which recording is necessary, the recording of them after the time prescribed is not allowed to effect by relation the rights and interests of intervening purchasers or creditors," &c.    It seems that the doctrine as to the effect of a revival under the circumstances stated,

leaves untouched the rights of the parties to the judgment and the relative rank of all liens acquired before the judgment lost its active energy, and protects only the rights of innocent third parties; in the view as stated, "that it would be against principle and work manifest injustice, to give to it this retrospective operation, so as to extinguish the intermediately acquired rights of third persons."

From the view which the court takes as to the first question, it will not be necessary to consider the second, as to the right of the judgment debtor to a homestead in the premises, which is the subject of the contention.

The judgment of this court is, that the judgment of the Circuit Court be reversed, and the case remanded for such further proceedings as may be considered necessary to carry out the conclusions herein announced.

MR. CHIEF JUSTICE MCIVER and MR. JUSTICE POPE concurred in the result.