ROWLAND v. SHOCKLEY.

1. EXECUTOR—TENURE OF ESTATE.—An administrator *cum testamento annexo*, holding as such the lands of testator, cannot set up a claim of right as devisee as against the testator's creditors or heirs.

2. EXCEPTIONS—CIRCUIT JUDGE—FORMER DECREE.—Exceptions not considered that alleged error in rulings which were not made, and which could not have been made, because previously decreed by another Circuit Judge in the cause.

3. REVIVAL OF JUDGMENT—RES JUDICATA.—At the time that the law gave lien to a judgment for ten years, with the right, within three years thereafter, to have it continued for a like period as of the date of the former recovery, a judgment sixteen years old was revived by default under summons and complaint with the force and effect of the former recovery; and no appeal was taken. *Held*, that as the order of revival was made in a proceeding in which the court had jurisdiction of both subject-matter and parties, the judgment was valid according to the terms of the order of revival, and a sale thereunder gave good title as against the defendant and her conveyees, and also as against the heirs of the testator for whose debt this judgment was rendered against his personal representative.

4. IBID.—ABSTRACT.—Where a judgment is properly entered on the abstract of judgments, an order of revival of the judgment should not be also entered on such abstract.

Before WITHERSPOON and FRASER, JJ., Laurens, September, 1893, and September, 1894.

This was an action for partition, commenced January 10, 1893, by Sarah F. Rowland against William L. Shockley and others, all persons claiming an interest as heirs of Joseph J. Rowland, deceased, or as conveyees of such heirs, being made parties. And John H. Young intervened as a party defendant, and alleged title in himself to the lands sought to be partitioned.

The Circuit decree (excepting its statement of the facts, which are all restated in the opinion of this court,) was as follows:

It is urged by plaintiff's counsel that Judge Kershaw had no authority to revive the original judgments, and that the judgments and executions, under which the land was sold and purchased by the defendant, John H. Young, *are void.* I do not think that the failure to separately enroll and to enter the proceedings to revive the judgment in the abstract of judgments in the clerk's office, can have the effect to render the judgments and executions void. The judgments and executions under which the land was sold are based upon Judge Kershaw's order reviving the original judgments of the subject-matters, and the record shows that the court acquired jurisdiction of the person of Elizabeth L. Rowland as executrix, by her acceptance of the summons to revive the original judgments. I conclude that if Judge Kershaw erred in granting the order reviving the original judgments after such a lapse of time as contended by plaintiff, it was an error of law that cannot be reviewed by another Circuit Judge, and that it cannot be corrected in this action. I further conclude, as a matter of law, that the judgments and executions, under which the sheriff sold and conveyed the land described in the complaint to the defendant, John H. Young, cannot be impeached in this action, but must be respected until vacated and set aside in some appropriate proceeding.

Assuming for the purposes of this action that the judgments and executions under which the land was sold are valid, what title to or interest in the land did the defendant, John H. Young, acquire under the sheriff's conveyance to him? In *Huggins* v. *Oliver*, 21 S. C., after reviewing the cases in this State holding that land can be sold under a judgment against an administrator, on page 159, the rule is stated to be: "That while, as a general proposition, it is true that lands of an intestate may be sold under a judgment recovered against the administrator upon a debt of the intestate, yet if the lands have passed into the actual and exclusive possession of the heirs before the judgment has been recorded, and before any lien has thus been fixed upon them, they can no longer be sold under such judgment,

and can only be reached by the usual proceeding to subject real estate in the hands of the heir to the payment of the debt of the ancestor, to which proceeding the heir would, of course, be a necessary party." This is a question of fact. The evidence shows that Elizabeth L. Rowland, the widow, was in the possession of the land at the time the original judgments were obtained against her as administratrix of her husband, Joseph J. Rowland, with the will annexed; but the evidence fails to show the character of the possession at the time, whether she held the possession as the administratrix or as the life tenant under her husband's will. It would not be fair to either of the parties to indulge in presumptions as to the character of the possession of the land by Elizabeth L. Rowland or any of the other devisees under the will of Joseph J. Rowland at the time that the judgments were originally obtained against Elizabeth L. Rowland, as administratrix, under which the land was sold by the sheriff.

It is, therefore, ordered, that it be referred to J. H. Wharton, Esq., clerk of the court, as special referee, to take additional testimony, after giving due notice to all parties to the above entitled action, and to inquire as to who was in the possession of the land described in the complaint on the 2d of October, 1875, when J. S. Craig and J. Goodwin, as plaintiffs, obtained judgments against Elizabeth L. Rowland, as administratrix, in the Common Pleas for Laurens County, as well as at the date of the sale of said land by the sheriff in November, 1891; also, as to the character of said possession—whether held as executrix, administratrix or devisee—and whether said possession was actual and exclusive. The said special referee is further directed to file the testimony in his office taken under his order, and notify the parties to this action of such filing at least fifteen days before the opening of the next term of the Court of Common Pleas for Laurens County.

The only point intended to be decided in this action is that the order of Judge Kershaw reviving the judgments cannot be reviewed by me, and that the judgments and executions under which the land was sold by the sheriff cannot be impeached in this action. All other points raised by the pleadings and the

evidence already taken are left open without prejudice for future adjudication. The evidence taken at the former hearing will be filed with the order to be considered hereafter as part of the evidence taken in the cause.

All of the parties except W. L. Shockley and John H. Young appealed.

*Messrs. W. H. Martin* and *F. P. McGowan,* for appellants.

*Messrs. Johnson & Richey* and *Ferguson & Featherstone,* contra.

February 28, 1895. The opinion of the court was delivered by

MR. JUSTICE POPE. Joseph J. Rowland departed this life in July, 1862 or 1863, leaving of force his last will and testament, wherein he devised a tract of land to his widow, Elizabeth L. Rowland, for and during her life, and at her death to his three children, Robert E., Ludy T., and Sarah E. Rowland, in equal portions. The testator nominated his son, Robert E. Rowland, the executor of said will, and further nominated his widow, Elizabeth L. Rowland, to be the executrix of this will during the minority of the said Robert E. Rowland. Elizabeth L. Rowland, early in the year 1863, qualified as such executrix *durante minore aetate* of the said Robert E. Rowland. The said Robert E. Rowland, having attained full age in the year 1871, formally renounced the executorship, whereupon the said Elizabeth L. Rowland was duly appointed administratrix with the will annexed of the estate of the said Joseph J. Rowland, deceased, in that year, 1871.

The estate of Joseph J. Rowland was in debt, and in 1875 a judgment was obtained on a debt he had contracted in his lifetime, in the suit of J. S. Craig and Joseph Goodwin, as executors, as plaintiffs, against Elizabeth L. Rowland, as administratrix of the estate of Joseph J. Rowland, deceased, in the Court of Common Pleas for Laurens County, in this State, for $1,040, debt and interest, and $140, costs. This judgment was duly assigned, in 1876, to one R. N. S. Young, and a payment of $154.53 was duly made thereon on the 22d December, 1876. The only land belonging to the estate of the said Joseph J.

Rowland was a tract, containing 330 acres, lying in Laurens County, in this State. Elizabeth L. Rowland still continued to occupy this land after her husband's death until salesday in November, 1891, when the same was purchased at sheriff's sale by John H. Young, as administrator of the estate of R. N. S. Young, who had died on 23d July, 1891. But before the death of R. N. S. Young he had commenced, on 1st July, 1891, an action against the said Elizabeth L. Rowland, as administratrix *cum testamento annexo* of the estate of Joseph J. Rowland, deceased, to revive the judgment of J. S. Craig and Joseph Goodwin, as executors, against the said Elizabeth L. Rowland, as administratrix as aforesaid. To the summons therein her acceptance of service thereof appears as made on 1st July, 1891, but she made no answer, nor did she give any notice of appearance therein. On the 23d July, 1891, his honor, Judge Kershaw, revived said judgment. On 7th day of October, 1891, the sheriff of Laurens County levied upon the tract of land (330 acres), and on the 2d November, 1891, he sold the same to John H. Young, as administrator, at the price of $1,000, which sum was duly credited upon the revived judgment.

On the 25th July, 1892, Elizabeth L. Rowland, the life tenant, and Robert E. Rowland and Ludy T. Rowland, two of the remaindermen under J. J. Rowland's will, conveyed by deed their respective estates in the tract of land of 330 acres to Sarah F. Rowland. It should have been stated earlier that Sarah F. Rowland, the other remainderman under J. J. Rowland's will, departed this life in 1883 or 1884, leaving as her heirs at law, her husband, William L. Shockley, and four children, Mary Etta, who has intermarried with one Watts, William G. Shockley, Arthur Shockley, and Lillian Shockley. The said Sarah F. Rowland conveyed by deed the one-half of her interest in the tract of land to W. H. Martin on 7th January, 1893.

On the 10th day of January, 1893, Sarah F. Rowland began her action for partition of this tract of land, and made defendants to her action, William L. Shockley, Mary Etta Watts, William G. Shockley, Arthur Shockley, Lillian Shockley, and

W. H. Martin. The defendants, except William L. Shockley, answered, admitting the facts and consenting to partition. William L. Shockley, by his answer, denied all the facts of the complaint, except the minority of his three children, William G., Arthur, and Lillian Shockley, and prayed "that said complaint as to him be dismissed," &c. These minor defendants were duly represented by a guardian *ad litem.* John H. Young was allowed, upon his own motion, to be made a party defendant, with leave to answer, by the order of his honor, Judge Wallace. His answer denied every allegation of the complaint, and further, "by way of defence to the plaintiff's supposed cause of action, he alleges that he has the legal title to and is in possession of the premises described in the complaint, and he denies that the plaintiff or any of the other defendants have any interest in the same." Thus a new line of battle was formed, changing the action from one of partition in equity to an action to try title on the law side of the Court of Common Pleas.

The action came on for trial before his honor, Judge Witherspoon, a jury having been waived. He heard testimony, and thereafter, on 30th December, 1893, filed his decree. This entire decree must be reported. Its effect was against the plaintiff, but on one point he was not satisfied to pass, namely, as to the character of the possession of the land by Elizabeth L. Rowland or any of the other devisees under the will of Joseph J. Rowland, at the time that the judgments were originally obtained against Elizabeth L. Rowland as administratrix, under which the land was sold by the sheriff, and he accordingly referred it to J. H. Wharton, Esq., as clerk, to take testimony and report as to who was in possession of said land on 2d October, 1875, when the judgment was originally obtained, as well as at the date of the sale in November, 1891; also as to the character of said possession, whether held by Mrs. Rowland as executrix, administratrix, or as devisee, and whether such possession was actual and exclusive. Testimony was taken upon these questions. A hearing thereof was had before Judge Fraser. He decided that Elizabeth L. Rowland being the administratrix with will annexed of the testator when the judg-

ment was recovered, and when the sale was made of the land in dispute by the sheriff thereunder, could not hold the same in the character of devisee or life tenant, so far as the rights of her testator's creditors were concerned—the law fixed the character of her possession; but admitted that he would have held otherwise if she had not been such personal representative. Thus holding himself, and giving due effect to the conclusions reached by Judge Witherspoon, he decreed that the complaint be dismissed. The plaintiff and all the defendants, except W. L. Shockley and John H. Young, appealed from both the decree of Judge Witherspoon and that of Judge Fraser on ten grounds. We will now consider these grounds of appeal.

The first assails the correctness of Judge Fraser's conclusion, "that Elizabeth L. Rowland could not hold the lands in dispute in any capacity other than as personal representative of Joseph J. Rowland, deceased, when he found as matter of fact that she held the same as devisee, and that no question but the character of the possession was before him." The appellants have erred in alleging that Judge Fraser held, in his decree, that as a matter of fact she held the land as devisee. An examination of its terms fails to show that the Circuit Judge announced any such finding. We cannot see any error in the conclusion of the Circuit Judge, that one who holds lands as executor or administrator, cannot set up an independent holding or tenure of said lands while so holding as executor or administrator. To hold otherwise would be to allow a trustee of an express trust to gain a personal advantage from such office at the expense of devisees and creditors of the testator, or the creditors and heirs at law of an intestate, as the case might be. This exception must be overruled.

The next ground of appeal, which is the second, alleges that Judge Fraser erred in not holding that Judge Kershaw had no jurisdiction or power to grant the order of July 23d, 1891, purporting to revive the original judgment, with leave to issue execution thereon." An inspection of Judge Fraser's decree shows that no such question as this was considered or passed on by him. Indeed, the decree of Judge Witherspoon on this question shut off any such inquiry from Judge

Fraser. Hence this ground of appeal is untenable. And as the third ground of appeal imputes error to Judge Fraser for "not holding that neither the original judgments nor the attempted revival of the same had any lien upon the said premises at the time of the sale by the sheriff," we may dispose of this ground as we have the second: No such question was presented or considered by Judge Fraser, nor, under Judge Witherspoon's decree, could such matters have been considered by Judge Fraser. This ground of appeal is dismissed.

Having passed upon the exceptions to the decree of Judge Fraser, and having ascertained there were no errors therein, it remains to consider the objections to the decree of Judge With·erspoon. The fourth exception, which complains that Judge Witherspoon "erred in holding that any entry after the alleged revival of said judgment was ever made in the abstract of judgments in the office of the clerk of the Court of Common Pleas for Laurens County," upon an examination of the decree itself, will be found to be untenable, for the reason that Judge Witherspoon did not so hold. Hence this exception is untenable. And the fifth exception is likewise founded in error as to what Judge Witherspoon held touching the jurisdiction or power of Judge Kershaw in granting the judgment of revival. This exception, therefore, is overruled.

We will consider the remaining five exceptions in a group. They are as follows: "6. Because he erred in holding that the order of Judge Kershaw could not be attacked in this proceeding. 7. Because he erred in holding that the said judgment and execution under which the land described in the complaint was sold, were valid and could not be impeached. 8. Because he erred in not holding that the said judgments and purported revivals had no lien upon the said premises sold to the defendant, John H. Young. 9. Because he erred in not holding that the original judgments lost their lien at the expiration of thirteen years, and that the order of Judge Kershaw created· no lien, because, *first*, more than thirteen years had elapsed; *second*, because no judgment predicated upon said orders was ever entered in the book of abstract of judgments. 10. Because he erred in not holding that the

attempted sale of the land by the sheriff to the defendant, John
H. Young, was void because, *first*, there was no lien upon the
land; *second*, because an execution could not be predicated
upon a mere order; and, *third*, because the execution did not
direct the sale of the property in the hands of the defendant in
execution to be administered."

When Joseph J. Rowland died, in 1862, his property, real
and personal, was liable to the payment of his debts, and this
was true, notwithstanding he left a will and attempted to de-
vise his lands. His wife, Elizabeth L. Rowland, by her own
act, became his personal representative, and so continues until
to-day—first, as executrix *durante minore aetate* of Robert E.
Rowland up to 1871; second, from 1871 up to the present time
as administratrix *cum testamento annexo*. By law, it was made
her duty to pay testator's debts, if his estate was sufficient
therefor. In 1875, not having paid the debts of J. J. Rowland,
two creditors sued her, as administratrix, to judgment. These
judgments were duly enrolled, and executions were issued
thereupon. She paid $154.53 on these judgments, 22d Decem-
ber, 1876. By law, these judgments became liens upon Joseph
J. Rowland's real property for ten years from 1875, with leave
at any time during the three years immediately ensuing the
year 1885, to wit: until 1888, to renew such judgments for like
period of ten years, with their liens upon the property of J. J.
Rowland. See section 310 of Code of 1882.

Now the plaintiffs, in such judgments, having waited until
after 1888, to wit: until 1891, before they applied to the court
to renew such judgments, the children, or their grantees, of ·
Joseph J. Rowland, say that it was not in the power of the
Circuit Court to revive such judgments after the year 1888.
It is well to notice that the powers by which judgments are
renewed, as provided for under *section 310 of our Code of Civil
Procedure* [of 1882], was by the *service of a summons* on the ·
debtor, as provided by law, requiring him to show cause, if
any he can, at the next term of the court for his county, why
such judgment should not be revived." Then it is manifest
that if the plaintiffs in execution had, at any time between
1885 and 1888, applied to the court, in accordance with section

310, *supra,* by service of a summons to renew their judgments upon Mrs. Rowland, as administratrix, such judgments would have been continued for ten years thereafter. The plaintiffs in execution did not avail themselves of section 310, by service of a summons to renew, but, under *section 111,* they moved by service of a summons and a complaint upon the debtor in execution, Mrs. Rowland as administratrix, wherein they duly alleged that on the 25th July, 1875, they had obtained judgment in the Court of Common Pleas for Laurens County against the defendant, Elizabeth L. Rowland, as executrix of Joseph J. Rowland, deceased, for the sum of $1,040 and $110.12 as costs; that such judgment was duly entered, docketed, and enrolled in the proper office, and execution issued thereon; that no part of said judgment except the sum of $154.53, paid on the 22d December, 1876, had been paid thereon; that the plaintiff is now the holder thereof: "Wherefore the plaintiff demands judgment against the defendant, that the said judgment be revived to have all the force and effect of the former recovery, and that he be allowed to issue execution thereon for the amount due on the same as above set forth."

The service of this summons and complaint was duly accepted by Mrs. Rowland on 1st July, 1891. Not having answered on demand to such action, nor caused any notice of appearance to be served within twenty days after such acceptance of service of the summons and complaint, Judge Kershaw made an order on the 23d July, 1891, reviving said former judgment. From this order of revival no appeal was taken. Under such order of revival execution was issued and levied upon the lands in question, and sold by the sheriff to the defendant, John H. Young. Can it be said that the Court of Common Pleas for Laurens County, in this State, was without power to render this judgment? It had the jurisdiction of the *subject-matter,* for the original judgment was not twenty years old, and had been rendered in an action in the county where testator died, and where his personal representatives lived, and the basis of this action was a contract of a person dying testate there. It had jurisdiction of the *person* of the defendant; she was the personal representative of one who died testate, in Laurens County,

owing a debt, by contract, to be fulfilled there, and she had, by her own acts, enabled the court to acquire jurisdiction of her person. The judgment rendered bound Mrs. Rowland and her *privies.* Were not the plaintiff and the defendant, W. H. Martin, her privies? Their right of action *during her lifetime* originated in a transfer, by deed, to them of her life estate in said lands. There is no such privity, however, *in this respect* in the Shockley children. They are bound because the judgment is against the estate of their testator, on a debt he contracted.

But it is contended, also, that the order of revival was not entered in the abstract of judgments, as required by the Code of Procedure, and, hence, there was, technically or legally speaking, no judgment. This proposition would have merit in it if the plaintiff in execution had sued upon the judgment of 1875 as his cause of action, as his debt, so to speak. *Lawton* v. *Perry,* 40 S. C., 255; *Garvin* v. *Garvin,* 27 S. C., 477, and cases there cited. In this latter case, the last judgment would have absorbed within itself, or have merged the previous judgment of 1875, and, therefore, would itself have been, necessarily, entered up in the book of abstract of judgments. *The plaintiff in execution did not follow this plan, however;* he, on the contrary, complained on this judgment as unsatisfied, to the end that the old judgment (that of 1875) might be revived. Hence, when the Circuit Judge, Judge Kershaw, made the order of revival of the judgment of 1875, with leave to issue an execution to enforce the same, it was not necessary or proper to place this order of revival on the abstract of judgments. If it had been so entered, there would have appeared to the world two judgments instead of one, and this would have been improper. It does not seem to us, therefore, that there was any error there.

Again, it is contended that the land was sold by the sheriff under a judgment that had no lien upon the land. If the judgment of 1875 was revived by the order of Judge Kershaw in 1891, it had a lien upon the land, under the act of 1873, providing liens to judgments. Candidly speaking, there could be nothing in any of the matters of appeal to com-

mend them to our approval, for they are opposed to the idea of a testator's estate being made liable to the payment of his honest debts, and this, too, for the benefit of his own devisees. We know that sometimes creditors wait so long that they are barred by lapse of time, statute of limitation or some kindred defence. But in the case at bar none of these things appear. If we were disposed to conjecture, we might say that R. N. S. Young, who was a brother of Mrs. Rowland, in order to keep her home from being sold, and to give her an opportunity to pay for it, bought up these judgments, and waited on her to see if this could not be effected. But we will not yield to this suggestion to deal in conjectures. The facts themselves are sufficiently stubborn in this case to bar plaintiff, and the defendants who act with her, from any recovery here. Under the facts, as found by Judge Witherspoon, we are not disposed to question his conclusion that the plaintiff here, and her allies among the defendants, cannot impeach the order of revival pronounced by Judge Kershaw in 1891. Beyond this announcement we do not think it necessary for this court to go. These exceptions here discussed must be overruled.

It is the judgment of this court, that the judgments of the Circuit Court, appealed from, be affirmed.

MR. CHIEF JUSTICE MCIVER concurred in the result.