### BRANTLEY v. BITTLE.

1. WILLS—LIMITATION OF ESTATES.—A will devising land to A. and B. for life, on death of either to survivor for life, and on death of survivor to "be equally divided among my heirs, share and share alike * * * the child or children of a deceased parent taking the share to which his, her or their parent would have been entitled if living," carries the estate to those who are heirs of testator under the statute at his death *per capita*, but the share of the heir who dies after testator and before falling in of life estate, passes to the children of the heir and not to his grantee; and the share of an heir who dies without children goes to his heirs and such inherited interest passes to the grantee of the heir.

2. RENEWAL.—A JUDGMENT cannot be renewed against the administrator of judgment debtor by his acquiescence after the expiration of twenty years from the death of the judgment debtor, and where the right of action on the judgment was barred at the time of issuance of summons to renew.

3. APPEAL.—A party not serving notice of intention to appeal cannot procure consideration of his exceptions to Circuit decree by printing them in "Case" of appellants proper.

Before WATTS, J., Chesterfield, April, 1904. Modified.

Action by Jno. H. Brantley and others against J. Westley Bittle and others. From Circuit decree, defendants, J. Westley Bittle and Mary U. Liles, appeal.

*Messrs. Stevenson & Matheson* and *Edward McIver,* for
J. Westley Bittle, appellant, cite: *As to construction of the
will:* 44 S. C., 522; 27 S. C., 479; 11 Rich. Eq., 207; 6 Rich.
Eq., 37; 1 Hill Ch., 358; 37 S. C., 264. *As to the revival
of the judgment:* 21 S. C., 74; 35 S. C., 387; 43 S. C., 255;
40 S. C., 762; 39 S. C., 263. *Note is presumed paid after
twenty years:* 26 S. C., 486. *No appeal lies unless notice
is given:* Code of Proc., 339; 30 S. C., 607; 56 S. C., 54.

*Mr. W. P. Pollock,* contra, and for Mary U. Liles, appel-
lant, cites: *As to construction of the will:* 4 S. C., 18; 25
S. C., 282; 28 S. C., 242; 44 S. C., 504; 66 S. C., 155. *As
to the renewal of the judgment:* Code of Proc., 111, 309,
310; 21 S. C., 159. *Statute of limitations and presumptions
of payment do not apply to claim of Mrs. Liles:* 21 S. C.,
121.

July 18, 1905. The opinion of the Court was delivered
by

MR. JUSTICE GARY. This is an action for partition and
to enjoin the enforcement of a judgment rendered against
the testator, in 1867, and revived in 1900, against the ad-
ministrator of his estate. The appeal raises the question
as to the validity of the judgment, and involves the construc-
tion of the testator's will.

John Bittle made his will in 1868, and died prior to the
22d of February, 1871, as the will was admitted to probate
on that day. The fifth clause of the will is as follows:
"*Fifth:* I give and bequeath to my daughters, Roxana Bit-
tle and Emily Vick (widow of Albert Vick, deceased,) the
whole of the remainder of my estate, both real and personal,
to have, hold and enjoy the same jointly during their natu-
ral lives, and upon the death of either of my said daughters
(Roxana or Emily), it is my will and desire that that por-
tion of my estate to which she was entitled at her death
shall go to the one then surviving (Roxana or Emily), and
at the death of the other, it is my will and desire that the

whole of my estate, both real and personal, be equally divided among all my heirs, share and share alike, my grandson, Franklin Bittle, son of my daughter, Emily Vick, taking an equal share with the other of my heirs, the child or children of any deceased parent taking the share to which his, her or their parent would have been entitled, if living."

The testator left surviving him eight children, viz: Eliza J. Brantley, Elmira Long, Narcissa Buchanan, Emily Vick. Roxana Bittle, Mary Ulsey Liles, Irvin Bittle, and John W. Bittle, also three grand-children—children of his deceased son, Burrel Bittle. He likewise left surviving him his grand-son, Franklin Bittle—an illegitimate son of Emily Vick. Franklin Bittle and certain of the heirs conveyed their rights in the testator's estate to John W. Bittle. Eliza J. Brantley, one of the parties making said conveyances, died leaving children before the surviving life tenant. The surviving life tenant died on the 31st of May, 1900.

The first question that will be considered is whether the children of Eliza J. Brantley, who conveyed her share to John W. Bittle, have any interest in the estate under the will of the testator.

His Honor, the Circuit Judge, ruled upon this question as follows: "The referee held that under the clause of the will set out above, the children of the testator who were alive at the time of the death of the testator, and Franklin Bittle, who was specially provided for in the will the same as the children of the testator, and the children of Burrel Bittle, collectively representing their father, took a vested fee in remainder, and that 'it, therefore, follows that if during currency of the life estates, any of these remaindermen conveyed away his or her interest in said estate, the purchaser of such interest took a good title thereto, and the children of such remaindermen have now no interest or title thereto.' It seems clear that the testator by the use of the word 'heirs' meant heirs taking *per stirpes,* which in this case means the same as children, and immediately upon the death of testator, the title to the realty, which

is herein sought to be partitioned, vested in these children of testator, who were surviving at the time of his death, and in the children of Burrel Bittle (his deceased son), and in Franklin Bittle, jointly. They took a vested, transmissible interest in remainder, and were it not for the use of the words, 'the child or children of a deceased parent taking the share to which his, her or their parent would have been entitled if living,' it might be construed to be a vested, transmissible indefeasible fee in remainder, but by the use of the words quoted above from the will, the testator provided for another class to take as executory devisees in case any of the first class, his children or 'heirs,' as intended by the terms of the will, should die during the life estate, leaving children. If any of his children who were surviving at his death should die during the life estate leaving children, then the interest of such child of the testator which had been vested would be divested, and the children of such deceased child would take as executory devisees by substitution. And as the grantee of any such deceased child of the testator could not take any greater interest in the estate than his grantor had: as by the death of any child or 'heir' of the testator during the life estate leaving child or children the fee would be divested and by substitution vested in such child or children as executory devisees; it necessarily follows that the title to an interest given by a child or 'heir' of testator who died during the life estate leaving child or children would not constitute good title, but, on the contrary, the child or children of such child or 'heir' of testator would take the title which had been in the parent. These views are fully sustained by the case of *Brown* v. *McCall*, 44 S. C., 504, 22 S. E., 823, and the case of *Rutledge* v. *Fishburne*, 66 S. C., 155, 44 S. E., 564."

The appellant contends, that the words, "the child or children of any deceased parent, taking the share to which his, her or their parent would have been entitled if living," have reference to the children of the testator dying during his lifetime, and not to the heirs dying after his death, and be-

fore the falling in of the life estates; that those words were used for the purpose of showing that the division among his heirs was to be made *per stirpes* and not *per capita*. These words were not intended to show the proportions in which those answering the description of heirs, at the death of the testator should take, for in that case they would be inconsistent with the provision that the estate should · be "equally divided" among such heirs, "share and share alike," and there is no necessity for resorting to such construction. Full force and effect can· be given to both provisions by construing the said words in the last sentence of the foregoing clause, as intending that the child or children should take the share of the heir who died after the testator and before the falling in of the life estates.

Under our construction of the will, the Circuit Judge erred in ruling that the word "heirs" was used in the sense of "children." It was, therefore, necessary to resort to the statute of distribution for the purpose of ascertaining who were the testator's heirs. When there is a devise to a class, and it is necessary to resort to the statute of distribution, for the purpose of ascertaining who compose the class, it will also be necessary to consult the statute in order to determine the proportions in which the individuals take, unless the context of the will shows in what proportions the testator intended they should take. The words "equally divided"· and "share and share alike," manifest the intention of the testator that those answering the description of "heirs" at his death should take *per capita* and not *per stirpes*. *Allen* v. *Allen,* 13 S. C., 512; *Dukes* v. *Faulk,* 37 S. C., 255, 16 S. E., 122.

The decree of the Circuit Judge as to the question under consideration (except in the respects indicated) is satisfactory to this Court, for the reasons therein stated, and his conclusion is fully sustained by the authorities which he cites, to which may be added the case of *Woodley* v. *Calhoun,* 69 S. C., 285. The exceptions raising this question

are overruled, as they do not assign error in the ruling that the heirs take *per stirpes* instead of *per capita.*

Roxana Bittle and Irvin Bittle died without leaving children, about the year 1873. Thereafter Eliza J. Brantley conveyed to John W. Bittle "all the right, title, interest, claim and demand, which she had of, in and to all the undivided estate of John Bittle, either in possession or expectancy." She died before the death of the last life tenant, leaving children. The question for consideration is whether the shares which Eliza J. Brantley took as one of the heirs of Roxana Bittle and Irvin Bittle passed by her conveyance to John W. Bittle, or descended to her children at the time of her death, under the provision of the will, that they should take by substitution in case the parent died before the falling in of the life estates. The language of the deed is comprehensive enough to show an intention on the part of Eliza J. Brantley to convey the said shares. There are no words in the will manifesting an intention to create cross-remainders between those to whom the property was devised. The shares which Eliza J. Brantley inherited from her brother and sister were not subject to the provisions of the will, and she had the right to dispose of them as she saw fit. The principles applicable in such cases are stated in *Boykin* v. *Boykin,* 21 S. C., 513; *Dickson* v. *Dickson,* 23 S. C., 216; *McGee* v. *Hall,* 26 S. C., 179, 1 S. E., 711, and *Gordon* v. *Gordon,* 32 S. C., 563, 11 S. E., 334. The exceptions raising this question are sustained.

The record contains the following statement of facts: "The judgment of C. J. Lilly against John Bittle, the testator, was obtained in 1867. Nothing appears to have been done to keep this judgment alive until the year 1900, when A. H. Buchanan was appointed administrator *de bonis non,* with the will annexed, and was served with summons to renew. It is presumed that the personal estate of John Bittle was fully administered by the executors. No effort was even made to renew this judgment against them or any of them. It does not appear when the

last one of them died.   There is an assignment upon the
original execution, dated May 3d, 1873, of this judgment
to J. W. Bittle, and it is still owned by him.   Upon the ser-
vice of summons upon Buchanan he made default, and there-
upon an order to renew was taken.   The heirs were not
made parties to this proceeding, though it appears they en-
deavored to be heard thereon.   The issue, which is raised
in the complaint in this case, is that the judgment is pre-
sumed to be paid from lapse of time and is not now a lien on
the lands of the estate.   This issue is now before us."   The
referee decided the issue against the appellant, John W.
Bittle.   His Honor, the Circuit Judge, simply adopted the
report of the referee in this respect, and made it the judg-
ment of the Court.

The appellant's seventh and eighth exceptions are as fol-
lows:                                                                .

"VII.  The Circuit Judge erred in holding that the re-
newal of the judgment of Lilly *v.* Bittle against the admin-
istrator *de bonis non* of John Bittle, did not revive that
judgment and its lien upon the land of John Bittle's estate.

"VIII.  The Circuit Judge erred in holding that the re-
vival of a judgment and renewal of the execution against
the personal representative of the deceased, where such
judgment was granted prior to 1868, although the proceed-
ings to revive the same were commenced more than twenty
years after the entry of the judgment, did not revive the
lien of said judgment."

The appellant relies upon the cases of *McNair* v. *Ingram,*
21 S. C., 70; *Leitner* v. *Metz,* 32 S. C., 383, 10 S. E., 108;
*Rowland* v. *Shockley,* 43 S. C., 246, 21 S. E., 21, and *Wood-
ward* v. *Woodward,* 39 S. C., 259, 17 S. E., 638.   We do
not deem it necessary to discuss said authorities at length,
as neither they nor the recent cases of *Gregory* v. *Perry,* 71
S. C., 246, or *Anderson* v. *Baughman,* 69 S. C., 38, sustain
the proposition that a judgment recovered against a debtor
during his lifetime can be revived against the administrator
of his estate when the summons for renewal was not issued

against the administrator within twenty years after the death of the judgment debtor, *and when the right of action on the judgment was barred at the time the summons was issued.*

In the case of *Haselden* v. *Whitesides,* 2 Strob., 353, Mr. Justice Withers, in behalf of the Court, uses this language: "It is not to be overlooked that the inclination of the Courts, in modern times at least, is not to look with favor upon *legal* representatives, who by new promises prevent the bar of the statute, or who fail to plead it, in cases where it may be applied. In this tendency is to be seen a regard for distributees, legatees, and heirs, whose interests are directly involved. If my recollection be correct, it has been announced by the equity jurisdiction that the representative of an estate ought to plead the statute against a demand that is barred." The proceedings for renewal of a judgment are in the nature of an action—*Adams* v. *Richardson,* 32 S. C., 139—and it is the duty of an administrator to plead payment, or any other defense which shows that the right of action on the judgment is barred.

The rule governing the presumption of payment is thus clearly stated in *Shaw* v. *Barksdale,* 25 S. C., 204, 214: "It seems to us that where a creditor of an intestate in good faith recovers judgment against the legal representative on a bond or other like obligation before the twenty years have run out, that is a demand for the payment of his debt in the most effectual way, against the only person upon whom such demand could legally be made, and the judgment is a judicial ascertainment of the fact that the debt is not then paid, and gives a new point from which the currency of the period necessary to presume payment commences, not only in favor of the legal representative, but also in favor of the heir or devisee of the decedent. This doctrine, however, cannot be applied where the action is not commenced until after the twenty years have run out, because in such case the presumption of payment has arisen before any demand in legal form was made by the creditor for the payment of his debt,

and before anything was done by any one authorized to represent the estate tending to rebut the presumption. *After the presumption has once arisen, no act of the creditor, or any one assuming to represent the estate of the debtor, can have the effect of creating any new debt, or even reviving the legal obligation of any pre-existing debt, which has once lost such legal obligation by the presumption arising from the lapse of time"* (italics ours). See, also, Wood on Lim. of Actions, sec. 190.

Furthermore, this case comes within the provisions of section 2449, of the Code of Laws, which is as follows: "No mortgage or deed having the effect of a mortgage, no judgment, decree or other lien on real estate, shall constitute a lien upon any real estate after the lapse of twenty years from the date of the creation of the same: *Provided,* That if the holder of any such lien or liens as aforesaid shall, at any time during the continuance of such lien, cause to be recorded upon the record of such mortgage, or deed having the effect of a mortgage, or shall file with the record of said judgment, decree or other lien, a note of some payment on account, or some written acknowledgment of the debt secured thereby, with the date of such payment or acknowledgment, such mortgage, deed having the effect of a mortgage, judgment, decree or other lien, shall be, and continue to be, a lien for twenty years from the date of the record of any such payment on account or acknowledgment: *Provided, further,* That nothing herein contained shall be construed to affect the duration of the liens of judgments as prescribed by section 309 of the Code of Procedure."

This statute was construed in the case of *Henry* v. *Henry.* 42 S. C., 1. The facts of that case were as follows: In February, 1867, judgment was recovered, and in October, 1887, summons was served on the judgment debtor, requiring him to show cause why the original judgment should not be revived. The defendant in writing consented to the renewal, and made affidavit that the judgment was justly and *bona fide* due, and that no part thereof had been paid. In Octo-

ber, 1887, the judgment was renewed, and execution thereon
lodged with the sheriff, and in November, 1887, under this
execution and another in favor of a third party against the
defendant, junior to that of the plaintiff, real property was
levied upon and sold, and the proceeds held by the sheriff.
One Wesley Hornsby and others held an execution, in the
hands of the sheriff, next in order of priority to that claimed
by the plaintiff, and they demanded that the proceeds of
sale be applied to their execution, on the ground "that the
renewal of plaintiff's execution was irregular and void; that
the judgment was presumed to be paid by lapse of time;
that more than twenty years having elapsed from the time
of its original entry to the issuance of the summons to re-
new the same, it had lost its lien on the real estate of the
debtor under the act of December 24th, 1879." The Cir-
cuit Court sustained the objections urged against the valid-
ity of the judgment, and the order of the Circuit Court was
affirmed by the Supreme Court. The purposes for which
the statute of 1879 was enacted are clearly stated by the
Court in said case.

If the devisees in this case have the right to rely upon
the objections that were interposed to the validity of the
judgment in the case just mentioned, then, under the testi-
mony, the Court is bound to hold that the judgment is
presumed to have been paid; that it afforded no basis for re-
vival, as the right of action thereon was barred; and con-
sequently that it is no longer a lien on the lands now in their
possession. The Court, in the case of *Brock* v. *Kirkpatrick*,
60 S. C., 322, 346, 38 S. E. 779, recognizes the well settled
principle that the devisees have the right to rely upon the
defense that the right of action against the administrator
is barred, and quotes with approval the following language
from *Cleveland* v. *Mills*, 9 S. C., 436: "The only defense,
therefore, that could avail the defendants would have been
either to show that there was no such debt due by the testa-
trix, or that the action thereon against her executor was
barred by the statute of limitations, which they might do, even

though the executor should omit to interpose such a defense (*Bird* v. *Houze,* Sp. Eq., 250) ; or to show such *laches* on the part of the plaintiff as would deprive him of the right to invoke the equity powers of the Court, as in *Mobley* v. *Cureton,* 2 S. C., 140; or to have relied upon their own possession for the statutory period, as in *Miller* v. *Mitchell,* Bail. Eq., 437."

The facts in the case under consideration clearly show that the judgment creditor was guilty of *laches,* and that this is a proper case for the Court to apply this salutary doctrine. *Wagner* v. *Sanders,* 62 S. C., 73, 39 S. E., 950. The exceptions raising this question are overruled.

The defendant, Mary U. Liles, served certain exceptions which are set out in the record, but as she failed to serve notice of intention to appeal, the exceptions are not properly before this Court for consideration.

It is the judgment of this Court, that the judgment of the Circuit Court be modified in the manner indicated, and that in all other respects it be affirmed.