## BROCK v. KIRKPATRICK.

1. PLEADINGS—DEFENSES.—Upon suit on judgment, the allegations that judgment was obtained, &c., puts in issue the note—its basis—and to such allegations defendant may plead any defenses against the note.

2. IBID.—EXECUTOR—DEBTS OF DECEDENT—LEAVE OF COURT—JUDGMENT.—Action by creditor of decedent against devisee on judgment obtained against executors to subject lands devised to payment of such debt, may be brought without leave of Court.

3. EXECUTOR—CREDITOR—DEBTS OF DECEDENT—REMEDIES.—Right of creditor to have judgment against executor paid out of lands devised, is not affected by scheme of devisor to equalize her property among her children by deeds before execution of will, and creditor may pursue property in possession of devisees, or executor in *devastavit*.

4. LIMITATION OF ACTIONS—EXECUTOR—LANDS DEVISED—DEBTS OF DECEDENT—CAUSE OF ACTION—DEFENSES.—Statute of limitation will not run as to protect lands devised in possession of devisee against liability for testator's debts until after the remedy has been exhausted against the executor, no cause of action accruing against devisee until that time; but he may interpose any defense to the original obligation which the executor might have set up. *Cases reviewed and reconciled.*

Before GAGE, J. Abbeville, June, 1899. Modified.

Action by L. A. and T. H. Brock, in nature of creditor's bill, against Hannah Kirkpatrick and Annie Taylor, as devisees of Mrs. Jane Taylor, on the following complaint:

"I. That they, the plaintiffs, L. A. Brock and T. H. Brock, were late partners, doing business under the firm name of L. A. & T. H. Brock.

"II. That on the 21st day of March, 1895, the plaintiffs recovered a judgment against R. T. Kirkpatrick, as executor of the last will and testament of Jane Taylor, deceased, in the court of probate for Abbeville County, upon a debt which they held against Mrs. Jane Taylor upon a note executed by her in her lifetime, and upon which they, the plaintiffs, had previously recovered a judgment in the Court of

Common Pleas for Abbeville County, against the said R. T. Kirkpatrick, as executor of the last will and testament of Mrs. Jane Taylor, deceased, and said judgment of the probate court was duly docketed and transcribed into the office of the clerk of court of common pleas for Abbeville County, where it is now on file.

"III. That execution was duly issued upon said judgment against the said R. T. Kirkpatrick, as executor as aforesaid, and the same returned *nulla bona.*

"IV. That on the 15th day of December, 1888, the said Jane Taylor departed this life, leaving a last will and testament duly made, by which one R. T. Kirkpatrick was appointed sole executor thereof; and that on the 22d day of December, 1888, said will was duly admitted to probate in the office of the judge of probate court for Abbeville County, and letters testamentary was thereupon granted to the said R. T. Kirkpatrick, by the said probate court.

"V. That by said will the said Jane Taylor devised to the said Hannah Kirkpatrick and the said Annie Taylor, a tract of land known as 'The Home Place,' containing 460 acres, more or less, bounded by lands of Jane Johnson and others, 260 acres being devised to Annie Taylor, and 200 acres to Hannah Kirkpatrick, all in this State and county.

"VI. That the said Annie Taylor and Hannah Kirkpatrick have gone into possession of their respective tracts of land, and now claim to be the sole owners in fee thereof.

"VII. That the amount of the judgment of the plaintiffs recovered before the probate court was the sum of $177.61, which amount, with interest from the date of the recovery thereof, is still due and unpaid.

"VIII. That the plaintiffs have made every effort in their power to recover said debt from the executor, but have been unable to do so.

"IX. That this action is brought for the benefit of the plaintiffs and all other creditors of the said Jane Taylor, who are willing to come in and contribute to the expenses of this proceeding.

"Wherefore, the plaintiffs demand judgment that said lands be declared subject to the debts of Mrs. Jane Taylor, deceased, and especially to the debt of these plaintiffs, and that the same be sold, the creditors called in to prove their claims, and that the same be paid out of the proceeds of the land, together with the cost of this proceeding, including a reasonable fee to the plaintiffs' attorney for bringing this suit, and for such other and further relief as may be just and proper."

The answer of the defendants is as follows:

"I. That they deny each and every allegation contained in paragraphs I., II. and VII. of the complaint.

"II. That they deny the allegations contained in paragraph III. of the complaint, except as hereinafter admitted.

"III. That they deny each and every allegation contained in paragraph VIII. of the complaint.

"IV. That they have no knowledge or information sufficient to form a belief as to the allegations contained in paragraph IX. of the complaint, or as to any indebtedness of Jane Taylor, deceased, and they demand strict proof thereof.

"For a defense to the alleged cause of action, they allege: That the alleged note of Jane Taylor, mentioned in paragraph II. of the complaint, and upon which plaintiffs allege they have recovered a judgment against R. T. Kirkpatrick, as executor, &c., was a promissory note, and plaintiffs' cause of action on said note accrued more than six years next before the commencement of this action, and defendants interpose the statute of limitations as a bar to any recovery against them on said debt.

"For a further defense they allege: That by her last will and testament, mentioned in paragraph IV. of the complaint, the said Jane Taylor devised to the defendant, Hannah Kirkpatrick, 200 acres of land, and to the defendant, Annie Taylor, 260 acres of land, the two parcels being the tract of land described in the complaint, and these defendants are

now the sole owners and exclusive possessors thereof in fee simple.

"2. That immediately after the death of the said Jane Taylor, to wit: on the 16th day of December, 1888, each of said defendants, under and by virtue of said devise, entered into the sole and exclusive possession of her respective tract of said land, and each of them has remained in the exclusive and adverse use and occupation of her tract of said land, exercising acts of sole ownership and receiving the rents, issues and profits of the same continuously, for a period of more than ten years next preceding the commencement of this action. These defendants interpose their continuous adverse possession of said lands as a bar to this action.

"For a further defense to said alleged cause of action, these defendants allege: That the property aforesaid formed the homestead of the said Jane Taylor at the time of and prior to her death, the said testatrix being the wife of James Taylor, the head of a family residing in said State and county, who owned no property of consequence, and had no homestead. The said property is, therefore, exempt from levy or sale to pay the debts of the said Jane Taylor.

"For a further defense to the said alleged cause of action, these defendants allege: That the said Jane Taylor left other property sufficient to pay all her debts, which in and by her said last will and testament she willed, devised and bequeathed for that purpose. All of said property went into the hands of her said executor, and the failure of the plaintiffs to collect their alleged claim was due solely to their own negligence and laches in not enforcing payment out of said property in the hands of said executor.

"For a further defense to said alleged cause of action, these defendants allege: That the proceedings had in the probate court for said county, on March 21st, 1895, was a proceeding to ascertain the amount of money received by the executor of the said Jane Taylor, deceased, and the shares of the legatees under said will. That the amount in the hands of said executor was ascertained, and execution was issued

against him, but no judgment was rendered in favor of the plaintiffs, as alleged in paragraph II. of the complaint, and the probate court was without jurisdiction to render such a judgment.

"2. That the return of *nulla bona* on the execution, issued by the probate judge as aforesaid, was incorrect and untrue. That besides other property in his possession, the said R. T. Kirkpatrick owns and occupies a tract of land in said county containing about 155 acres, which these defendants believe and allege is worth about $1,800.

"For a further defense to said alleged cause of action, these defendants allege: That the said Jane Taylor left surviving her, besides these defendants, her following named children, to wit: R. T. Kirkpatrick, Mrs. Lizzie Shaw, Mrs. Jane Johnson, Mrs. Margaret Dodson, Mrs. Mary Hughes and Mrs. Barbara Brock, each of whom is in possession of real estate received as a part of their shares of the estate of the said Jane Taylor. That said real estate was given them by the said Jane Taylor, as follows: To R. F. Kirkpatrick, 155 acres; to Mrs. Lizzie Shaw, 152 acres; to Mrs. Jane Johnson, 120 acres; to Mrs. Margaret Dodson, 126 acres; to Mrs. Mary Hughes, 168 acres; to Mrs. Barbara Brock, 168 acres. Which said deeds were recorded in the office of register of mesne conveyance for Abbeville County, on January 2d, 1889.

"2. That the scheme and purpose of the will of the said Jane Taylor was that all of her children's shares of her estate should be equalized. That the lands conveyed to her said children were intended as a part of their shares of her estate, and were so received by them, and no consideration was paid therefor. That it would be inequitable to subject the lands of these defendants to the payment of the debts of Jane Taylor, without subjecting the lands of her other children to the payment of their just proportion of said debts.

"Wherefore, the defendants ask that the complaint herein be dismissed with costs."

Upon the call of the case, the defendants' attorneys filed the following written demurrer:

"The defendants move to dismiss the complaint in this action, on the ground that the complaint fails to state facts sufficient to constitute a cause of action:

"1. In that it fails to allege the date or amount of the note mentioned in the complaint, and upon which it is alleged the probate court rendered judgment against R. T. Kirkpatrick, administrator.

"2. That the plaintiffs' cause of action against the devisees and heirs of Jane Taylor, deceased, is upon the note mentioned in complaint and not upon the alleged judgment against the administrator, and a cause of action upon the note must be alleged in the complaint.

"3. In that, if it is an action upon judgment, the complaint fails to allege that leave to bring said action has been granted by the Court upon good cause shown, and upon notice to the defendants."

The plaintiffs also demurred to certain defenses set up by the answer, and filed the following written demurrer:

"The plaintiffs demur to the first subdivision of paragraph IV. of the answer herein on the ground that it fails to state facts sufficient to constitute a defense in this, viz:

"1. That it is immaterial to the defendants when the cause of action accrued upon the note, the plaintiffs having the right to bring the action to subject lands devised to the payment of the debts of the testator at any time within six years after their remedies against the executor have been exhausted.

"2. They also demur to the first subdivision No. 1, on page 2 of the answer, because it fails to state facts sufficient to constitute a defense in this, viz: That it does not allege that the land is worth less than the homestead, and that it fails to allege it is worth only $1,000, and because it fails to state that any one is entitled to a homestead in said lands at

this time, or that it was ever set off to said Jane Taylor as a homestead.

"3. They also demur to the first subdivision No. 2 on page 3 of the answer, on the ground that it fails to state facts sufficient to constitute a defense in this, viz: That it makes no difference how much land R. T. Kirkpatrick may own in his own right, unless it is alleged that he has property of said estate in his possession.

"4. The plaintiffs also demur to subdivisions No. 1 and 2 on page 3 of the answer, on the ground that it fails to state facts sufficient to constitute a defense in this, viz: That it is stated therein that the deeds to her other children were made by Mrs. Jane Taylor in her lifetime, and, therefore, the lands of said parties are not subject to the debts of said Jane Taylor; and whatever rights it may give these defendants as against the parties named in said subdivisions it cannot operate as any defense against the claim of these plaintiffs."

The Circuit decree is as follows:

"The plaintiffs sue to subject land devised to defendants to the payment of a judgment in plaintiffs' favor, against the executor of devisor. The defendants, among other things, allege as a defense (1) that the note sued to judgment is barred by the statute of limitations; (2) that the lands devised was the homestead of devisor, and is now exempt from levy and sale to pay the devisor's debt; (3) that the executor, against whom judgment was rendered, owns other land than that in controversy, which is liable for the payment of the judgment; (4) that the devisor in her lifetime executed deeds of other lands to other of her children, and the land devised to defendants was but part of the ancestor's scheme to make an equal division of her estate, and it would be inequitable to allow plaintiffs in this action to upset that scheme.

"At the call of the cause, the defendants demurred to the complaint on three grounds, to wit:

"(1) Because it fails to state the date or amount of the note sued to judgment.

"(2) Because the plaintiffs' cause of action is on the note, and not on the judgment; and the cause of action on the note must be alleged in the complaint.

"(3) Because, if the plaintiffs' cause of action is on the judgment, the complaint does not allege a previous leave of a Court to bring the action (Code, sec. 91).

"Thereupon the plaintiffs demurred to the defenses hereinbefore recited, as follows, to wit:

"(1) Because it is immaterial to the defendants when the cause of action accrued upon the note, the plaintiffs having right to bring the action * * * at any time within six years after their remedy against the executor has been exhausted.

"(2) Because the answer does not allege that the land is worth less than the homestead; and does not allege that any one is entitled to a homestead in the land at this time, or that it was ever set off to testator for a homestead.

"(3) Because it is immaterial how much land the executor owns in his own right, unless it is alleged he has in his possession property of the testator.

"(4) Because any right which defendants may have to demand contribution at the hands of other grantees of the testator cannot affect the right of plaintiffs to demand the relief sought.

"The issues thus joined are all of law. The action is in form a creditors' bill, omitting the executor of testatrix as a party, to reach assets not amenable to the execution issued on a judgment against the executor. The action might have been brought at law. The complaint does allege the rendition of a judgment against the executor, and the return of *nulla bona,* and the necessity for this action; but it also alleges the existence of the note sued to judgment, so that defendants can plead any defense to which the note may be subject. The first and second ground of defendant's demurrer are, therefore, overruled.

"Nor can the third ground of demurrer be sus-

tained, for this is not an action on a judgment, within the meaning of sec. 91 of the Code of Civil Procedure.

"I shall now consider the four grounds of the plaintiffs' demurrer to the defenses set up in the answer, and in an order inverse to that hereinbefore stated. The fourth ground is sustained. The right of the plaintiff to have the debt paid out of the assets of her who contracted the debt, cannot be affected by any derangement it may cause of the debtor's plan for the division of her bounty.

"The third is sustained. The plaintiffs are creditors of testator; they may also have a valid judgment against the executor of testator; but they may pursue either.

"The second ground of demurrer is also sustained; not, however, because defendants are not entitled to claim homestead, but because the facts which condition that right are not alleged in the answer. It does not appear from the answer what is the value of the land; it does not appear, in that paragraph of the answer which pleads the right of homestead, how the defendants are related to the original debtor; it does not there appear in what persons the right of homestead exists. When the proper allegations have been made, it will be time enough to adjudge the right of homestead. That question is reserved.

"And now I come to consider the first ground of plaintiffs' demurrer—that to the first stated defense in the answer. That defense alleges, that the note of testatrix, sued to judgment against the executor, was at the commencement of this action barred by the statute of limitations. The testatrix, Jane Taylor, died December, 1888; her note was sued to judgment 21st March, 1895, in an action against her executor, R. T. Kirkpatrick (paragraphs 2 and 4 of the complaint). The defendants are devisees of Jane Taylor, and at the commencement of this action, were in possession of the land in dispute, and claimed to be the sole owners thereof (paragraph 6 of the complaint). It does not appear from

any admitted allegation, at what time defendants so went into possession, whether before or after judgment; but the fact is, it was before judgment, and I so assume. The plaintiffs had no right to sell the land under their judgment and execution, because they had no lien on it; why no lien it is not exactly clear, but it is so held. The plaintiffs' right to subject the land to the payment of their debt, does not, therefore, depend on the existence of a lien, but the right depends, first, upon the existence of a valid debt of the ancestor and the possession by defendants (as volunteers) of the ancestor's property, which property is in good conscience first applicable to the payment of debts. What, therefore, is plaintiffs' cause of action against defendants? And cause of action does not necessarily mean a contract relation betwixt plaintiffs and defendants. There can be no question that plaintiffs' cause of action consists in the holding a valid debt against the testatrix, and the possession by defendants, as volunteers, of property liable for the payment thereof. These two facts give the legal right. When did the legal right, called cause of action, accrue? The plaintiffs contend, only when the plaintiffs' remedy against the executor was exhausted—that is, when judgment was rendered, execution issued, and *nulla bona* thereon returned. But as I conceive the law, the plaintiff had the right to pursue the devisees independent of the executor, and whether the executor had assets or not. The reason of this is made plain by Chancellor Harper, in *Vernon* v. *Falk,* 2 Hill Ch., 259, 260 and 261. If the plaintiffs had this right of pursuit, it *'accrued'* at that specific time when they held a past due obligation of the testator, and the defendants held property of the testator liable therefor. The judgment against the executor is *res inter alios acta,* cannot effect the defendants' rights, and, therefore, need never have been rendered. 'It is well settled, that in a proceeding to subject descended real estate in the hands of the (devisee) to the payment of the debts of the ancestor, a judgment obtained against the (executor) does not preclude the (devisee) from making any defense to

which the claim upon which such judgment has been obtained, may be subject.' *Wilson* v. *Kelly,* 19 S. C., 166. Some of the Judges have held, that a devisee was *privy* to a judgment rendered against the executor. Johnson, in *Mc-Mullen* v. *Brown,* 2 Hill Ch., 460. But others have held, that 'such judgment is at most only *prima facie* evidence of the validity of the claim,' and that a devisee's property cannot be taken until he has been heard. 2 Hill Ch., 259; 19 S. C., 168. The last seems the most approved doctrine. I have carefully read *Lanier* v. *Griffin,* 11 S. C., 566. That judgment is based on Judge Johnson's opinion on Circuit, in *McMullan* v. *Brown,* Hill Ch., 462. The Court of Appeals did not sustain all the conclusions of the Court below; and the same Court of Appeals lays down principles in *Vernon* v. *Valk, supra,* which are antagonistic to the conclusions of Judge Johnson.

"My opinion is, if the facts so stated as the cause of action herein, existed more than six years before this action was begun, the statute may be pleaded against the enforcement of the obligation. The first ground of plaintiff's demurrer is, therefore, overruled."

The plaintiffs appeal on the following grounds:

"I. Because his Honor erred in holding that the plea of the statute of limitations set up by the defendants in their answer was a good defense to the action of the plaintiffs, when he had already held that it was not necessary for the plaintiffs to set out in their complaint the date and amount of the note.

"II. Because it was error to hold that the defendants might plead any defense to which the note was subject; whereas, he should have held that the plaintiffs had six years after exhausting their remedy against the executor, in which to bring their suit to subject real estate descended to the payment of the debts of the testatrix.

"III. Because it is respectfully submitted that it was error in his Honor to hold that the plaintiffs had the right to pur-

sue the devisees independent of the executor, and whether he had assets or not, it being respectfully submitted that the plaintiffs had no right to bring suit against the heirs or devisees to subject lands devised to the payment of debts until said debt was legally established against the estate of the testator by the judgment of a Court of competent jurisdiction.

"IV. Because it is respectfully submitted that plaintiffs' cause of action was not the note nor the judgment, but the debt which is evidenced by them, and which it is declared by the statute that lands descended are liable for the payment of, and it was error in his Honor to hold that if the note upon which judgment had been obtained was more than six years old, the action would be barred by the statute.

"V. Because his Honor erred in holding that the judgment against the executor was *res inter alios acta,* and cannot affect the defendants' rights, and, therefore, need never have been rendered; whereas, he should have held that the defendants were privies to the judgment against the executor, and had no right to dispute said judgment.

"VI. Because his Honor erred in not holding that the defendants did not have the right to plead the statute of limitations on the note, after having held that the cause of action of the plaintiffs consisted in the holding of a valid debt against the testatrix; and the possession by the defendants, as volunteers of property liable for the payment thereof, and it was, therefore, error in his Honor to overrule the demurrer of the plaintiffs to the defense of the plea of the statute of limitations."

The defendants also appealed on the following exceptions:

"1. Because his Honor erred in overruling defendants' first ground of demurrer to the complaint, which is as follows: 'Because the complaint fails to state a cause of action, in that it fails to allege the date or amount of the note mentioned in the complaint, and upon which it is alleged the probate court rendered judgment against R. T. Kirkpatrick, executor.'

"2. Because his Honor erred in overruling defendants' second ground of demurrer to the complaint, which is as follows: 'That the plaintiffs' cause of action against the devisees and heirs of Jane Taylor, deceased, is upon the note mentioned in the complaint, and not upon the alleged judgment against the executor, and a cause of action upon the note must be alleged in the complaint.'

"3. Because his Honor erred in overruling defendants' third ground of demurrer to the complaint, for failing to state facts sufficient to constitute a cause of action, which is as follows: 'In that, if it is an action upon a judgment, the complaint fails to allege that leave to bring said action has been granted by the Court upon good cause shown, and upon notice to the defendants.'

"4. Because his Honor erred in not holding, that in an action to subject lands descended or devised to the payment of the debts of the ancestor or testator, the cause of action is upon the original contract, and not upon a judgment recovered against the executor or administrator alone; and that it was necessary for plaintiff to allege in the complaint a cause of action on the note referred to in the complaint.

"5. Because his Honor erred in holding that the cause of action on the note is sufficiently stated in the complaint, when the complaint fails to allege either the date or amount of the note, or when the note became due.

"6. Because his Honor having held that plaintiffs' cause of action consists in having a valid debt against the testatrix, and that if this cause of action existed more than six years before the action was begun, the defendants have a right to plead the statute of limitations, he should have held, also, that it was necessary for plaintiff to set out fully a cause of action on such debt of the ancestor, so that defendants' plea of the statute would be responsive to the allegations of the complaint.

"7. Because his Honor erred in sustaining plaintiffs' demurrer to the third defense alleged in the answer, which ground of demurrer is as follows: 'Because it fails to state

a defense in this, viz: that it does not allege that the land is worth less than the homestead, and that it fails to allege that it is worth only $1,000, and because it fails to state that any one is entitled to a homestead in said lands at this time, or that it was ever set off to Jane Taylor as a homestead.'

"8. Because his Honor erred in holding that the facts which condition defendants' right to claim homestead are not alleged in the complaint.

"9. Because his Honor erred in sustaining plaintiffs' demurrer to defendants' fifth defense, on the ground that the answer, as to this defense, fails to state facts sufficient to constitute a defense in this, 'that it makes no difference how much land R. T. Kirkpatrick may own in his own right, unless it is alleged that he has property of said estate in his possession.'

"10. Because his Honor erred in holding that if plaintiffs, are creditors of testatrix and have a valid judgment against the executor, they may pursue either the executor or the lands devised.

"11. Because his Honor erred in sustaining plaintiffs' demurrer to the sixth defense set up in defendants' answer, on the ground that it does not state facts sufficient to constitute a defense, as it is stated in the answer that the deeds to her other children were made by Mrs. Jane Taylor in her lifetime, and, therefore, the lands of said parties are not subject to the debts of said Jane Taylor, and whatever rights it may give the defendants against the holders of said deeds, it cannot operate as any defense against the claims of these plaintiffs."

*Mr. Wm. N. Graydon,* for plaintiffs, appellants, cites: *As to liability of property devised to pay testator's debts:* Rev. Stats., 2000, 2080; 27 S. C., 323. *Is the plea of the statute of limitations set up by defendants in this case a good defense?* 9 S. C., 430; Rev. Stat., 2085; 2 Hill Ch., 259, 457; 11 S. C., 563; 19 S. C., 160; Speer Eq., 250; 4 McC., 128; 21 S. C., 147; 25 S. C., 214.

*Messrs. M. P. DeBruhl* and *Frank B. Gary,* contra, cite:
*Should the complaint have been dismissed for failure to state
a cause of action?* 1 Brev., 476; 4 McC., 128; 2 Hill, 579;
Speer Eq., 250; 21 S. C., 159; 24 S. C., 419; 1 S. C., 198;
19 S. C., 166. *This action should have been brought on the
original contract:* 38 Am. R., 15. *This complaint does not
state such a cause of action:* Code, 163, 91; 38 Am. R., 15.
*Six years will bar the cause of action on original contract,
and defendants can plead that here:* 5 Ency., 1st ed., 272; 1
S. C., 194; 38 Am. R., 15; 24 S. C., 421. *Devisee has right
to make creditor exhaust his remedy against executor by
proceedings in devastavit before pursuing devisee:* 48 S. C.,
92; 3 P. Wms., 333.

April 18, 1901. The opinion of the Court was deliv-
ered by

JUDGE BENET, *acting Associate Justice.* The plaintiffs
brought this action to subject lands, devised to the defend-
ants, to the payment of debts of the devisor. The main
facts in the case are these:

1. The devisor, Jane Taylor, died on 15th December,
1888, leaving a will of which R. T. Kirkpatrick was made
executor.

2. By her will she devised to the defendants each a tract
of land, into the possession of which they immediately en-
tered, and of which they are still in actual and exclusive
possession.

3. After the devisor's death, at some time before March,
1895, the plaintiffs recovered judgment against the executor
on a note given by the devisor, in the Court of Common
Pleas for Abbeville County.

4. On 21st March, 1895, the plaintiffs, in a proceeding to
prove said judgment, recovered judgment in the court of
probate against the executor, which was duly docketed and
became a judgment of the Court of Common Pleas.

5. It is not claimed that the defendants herein were parties

to any of these proceedings, but it appears that the executor was the sole defendant.                    .

6. Execution was issued, and returned *nulla bona*.

7. The debt is still unpaid.

The plaintiffs seek to subject the lands devised to the defendants to the payment of this debt of the devisor.    The defendants stand on several defenses; but the main defense is that the note sued to judgment is barred by the statute of limitations, that it was a promissory note, and the cause of action accrued more than six years before the commencement of this action on 21st April, 1899.    The report of the case will set forth in full—the complaint; the answer; the grounds of the defendants' demurrer to the complaint; the grounds of the plaintiffs' demurrer to the answer; the decree of the Circuit Judge; the plaintiffs' exceptions to the decree; and the defendants' exceptions thereto.

The cause was heard on Circuit by his Honor, Judge Gage, upon the pleadings.    In his decree he overruled the defendants' demurrer, sustained several of the grounds of the plaintiffs' demurrer; but overruled the first and most important, which reads as follows: "That it is immaterial to the defendant, when the cause of action accrued upon the note, the plaintiffs having the right to bring the action to subject lands devised to the payment of the debts of the testatrix at any time within six years after their remedies against the executor have been exhausted."    With regard to the defendants' demurrer which was overruled, and that portion of the plaintiffs' demurrer which was sustained, it is sufficient to say that we agree with the Judge in his decision, and we adopt that part of his decree as expressing the opinion of this Court on the points involved.    We do not, however, agree with him in his decision overruling the first ground of plaintiffs' demurrer, quoted above, but are of the opinion that it should have been sustained.    In his decree the Judge said: "There can be no question that plaintiffs' cause of action consists in holding a valid debt against the testatrix, and the possession by defendants, as volunteers,

22—60

of property liable for the payment thereof.   These two facts
give the legal right.  When did the legal right called cause
of action accrue?   The plaintiffs contend only when the
plaintiffs' remedy against the executor was exhausted—
that is, when judgment was rendered, execution issued, and
*nulla bona* thereon returned.   But, as I conceive the law,
the plaintiffs had the right to pursue the devisees indepen-
dent of the executor, and whether the executor had assets or
not.   The reason of this is made plain by Chancellor
Harper in *Vernon* v. *Valk,* 2 Hill Ch., 259, 260 and 261.
If the plaintiffs had this right of pursuit, it accrued at that
specific time when they held a past due obligation of the
testatrix, and the defendants held property of the testatrix
liable therefor.   The judgment against the executor is *res
inter alios acta,* cannot affect the defendants' rights, and,
therefore, need never have been rendered. * * * My opin-
ion is, if the facts so stated as the cause of action herein,
existed more than six years before this action was begun,
the statute may be pleaded against the enforcement of the
obligation.   The first ground of plaintiffs' demurrer is,
therefore, overruled."

The part of the demurrer thus overruled was directed
against the first defense of the defendants, in which they
pleaded the statute of limitations as a bar to any recovery
against them on the debt of their ancestor.   Taking
the facts alleged to be true, for the purposes of the
demurrer, we do not think the defendants could plead
the statute as a defense; and it is our opinion that the learned
Judge erred in holding it was a good defense, and in over-
ruling the first ground of plaintiffs' demurrer.   And we
shall proceed to set forth briefly the reasons for our decision.
The word briefly is used advisedly—for there is, we confess,
a strong temptation to write a long and elaborate review of
the cases in which the law involved has been considered and
discussed by the Courts of this State.   It was in *D'Urphey*
v. *Nelson,* 1 Brev., 289, decided in 1803, by the Constitu-
tional Court, that the first opinion was filed upon the effect

on lands descended or devised of a judgment against the administrator or executor recovered on a debt of the intestate or the devisor. This was followed, in 1827, by *Martin v. Latta,* 4 McC., 128; and from that time to the present these two cases have been regarded as the common source of the law on this interesting subject. These cases did much to settle the law, aided greatly, however, by the application of the principle of *stare decisis.* For the doctrines laid down were not received with favor, and the law was so long in doubt that it "seriously embarrassed the bench and bar for a long period of time," as said Mr. Justice Willard, in his dissenting opinion, in *Rogers* v. *Huggins,* 6 S. C., 377. Learned Judges and prudent Chancellors, like Colcock, Dunkin and Harper, did not hesitate in their written opinions to express their regret that the law had been so decided—*Martin* v. *Latta, supra; Bird* v. *House,* Speer Eq., 252; *Vernon* v. *Valk,* 2 Hill Ch., 261. But, like Judge O'Neall, in *Jones* v. *Wightman,* 2 Hill, 250, they regarded the two leading cases "as authority not to be questioned by either the bar or the bench; and that the Court would not only act unwisely, but with a rashness utterly reckless of consequences, were they now to undertake to review and reverse those cases." The construction put upon the statute of 5 Geo. II., C. 7, in *D'Urphey* v. *Nelson,* has thus become the settled law of the State, namely, that the lands descended are liable for the payment of the ancestor's debt, and may be sold under a judgment recovered on that debt against the administrator, although the heirs were not parties to the action. So, also, sec. 2080, Rev. Stat., makes lands devised liable for the payment of testator's debts; while sec. 2000 makes all devises "absolutely and utterly void" against creditors by bond or specialty.

The general proposition—that lands descended or devised may be subjected to the payment of the debts of the intestate or the testator—is plain and easily understood, but the application of it as a rule of law has frequently been attended with great difficulty. Different cases presented each a different

state of facts, and this law in favor of creditors had to be regarded from different points of view. Could this rule be applied, whether the heirs or devisees were or were not in the actual and exclusive possession of the land? Could it be applied as well after as before partition? Could exclusive possession by the heirs or devisees for a sufficient length of time prevent the application of the rule, the creditor thus losing his right by *laches?* These and cognate questions came before the Courts for adjudication in numerous cases, and the long line of opinions in our reports settling these questions attest as well the difficulty of the subject as the learning, labor and research of the Justices who delivered them. Some of those opinions present a careful and exhaustive review of all the cases from *D'Urphey* v. *Nelson* down, and they succeed in reconciling views which at first sight may seem to be irreconcilable: for example, the opinion of the Court, by Mr. Chief Justice Moses, in *Rogers* v. *Huggins,* 6 S. C., 356, and the learned and elaborate opinion by Mr. Chief Justice McIver, in *Huggins* v. *Oliver,* 21 S. C., 147, in which latter case there is a complete and instructive review of almost every decision on the subject. After careful and repeated perusal and consideration of all the cases, the writer of this opinion came to the conclusion that it would be supererogatory, however interesting, to prepare a thorough, analytical review of all of them—to attempt to do again what has already been so well done. He, therefore, contents himself with stating briefly the results of the labors of his predecessors, as disclosed by the leading cases.

It has already been shown that the case of *D'Urphey* v. *Nelson, supra,* decided that the statute of George II. makes the land of a deceased person assets in the hands of his personal representatives, and thus liable for the payment of the debts of the deceased. The case of *Martin* v. *Latta, supra,* simply reaffirms the law as laid down in *D'Urphey* v. *Nelson.* In neither case did it appear that the heirs or distributees had ever been in possession of the land; but, on the contrary, it was shown in both cases that a purchaser was in possession.

Consequently nothing was said·in·either case about the rights
of heirs or devisees in actual and exclusive possession before
judgment recovered against the administrator or executor.
In *Jones* v. *Wightman, supra,* the plaintiff was in possession
as purchaser under a judicial sale for partition.   While still
adhering to the rule established in D'Urphey's case as appli-
cable when the heirs held the land as descended estate, and
whether in actual possession or not, Judge O'Neall deliver-
ing the opinion of the Court, held that the rule did not apply
after the lands had been partitioned and purchased·from
the heirs by a third person.   It thus appears that lands
descended or devised cannot be subjected to payment of
ancestor's debts, when by partition or other acts of law, the
character of the possession is changed, and becomes exclu-
sive in the heirs or devisees.   *Bird* v. *Houze,* Speer's Eq.,
250, marks another step forward in the progress of the doc-
trine under discussion.   Chancellor Dunkin, while dissatis-
fied with the decision in D'Urphey's case, still recognized it
"as a settled law of property," but held in Bird's case that
the exclusive possession of the heirs, and acts of ownership
exercised by them, protected their inheritance from levy and
sale under an execution against the personal representative
of their intestate.   This does not mean that the mere fact of
actual and exclusive possession in the heir will prevent the
application of the rule in D'Urphey's case.   Such a construc-
tion would amount to a practical abrogation of the rule; for,
as was pointed out by Mr. Chief Justice Moses, in *Rogers*
v. *Huggins, supra,* "In the very large proportion of the in-
stances in this State (and the case before us presents one),
they upon whom the inheritance is cast are in possession at
the very moment of the death of the ancestor, for in nine
cases out of ten they are members of his own household."
The reasonable construction of the decision in *Bird* v. *Houze*
is that while lands in the actual and exclusive possession of
the heirs, and over which they have exercised acts of owner-
ship, may not be sold under a judgment against the adminis-
trator upon the debt of the intestate—and that, too, although

no regular partition has been made—yet may they still be subjected even in the hands of the heirs to the payment of the ancestor's debts in a proceeding instituted for that purpose, to which proceeding the heirs would be necessary parties. The judgment of the Court in *Bird* v. *Houze* was based on the additional ground of *laches*. It appeared that nothing had been done for ten years after the judgment had been recovered, and the heirs had been left in undisturbed possession for twelve years. "After such *laches*," said the Court, "it is too late to resort to the heir." This was the first case in which the fact of actual and exclusive possession in the heir was before the Court. It was the first, also, in which the heir had a defense which the administrator had failed to interpose, namely, the statute of limitations, which was sustained. And the decision of the Court in that important case went no further than this: that lands descended and in the actual and exclusive possession of the heir may not be subjected to the payment of the ancestor's debt without giving the heir notice and an opportunity to defend— that is, in a proceeding to which he would be a necessary party. This just interpretation shows that there is no conflict between the cases of *D'Urphey* v. *Nelson,* and *Bird* v. *Houze.*

Another instructive case is *Rogers* v. *Huggins,* 6 S. C., 356. It has gone further than any other case, as was said by Mr. Chief Justice McIver, in *Huggins* v. *Oliver, supra.* It decided that the mere fact that the heirs of an intestate were in possession of the land, would not defeat the right of a creditor to have the same sold under a judgment obtained against the administrator upon a debt of the intestate. And in that case it was conceded that after partition, lands of the intestate cannot be sold under a judgment against the administrator. The opinion was delivered by Moses, C. J., Willard, A. J., dissenting.

We now come to those cases which are particularly referred to by Judge Gage in his decree in the case at bar. The learned Judge says: "I have carefully read *Lanier* v.

*Griffin,* 11 S. C., 566. That judgment is based on Judge Johnson's opinion on Circuit, in *McMullin* v. *Brown,* 2 Hill Ch., 462. The Court of Appeals did not sustain all the conclusions of the Court below; and the same Court of Appeals lays down principles in *Vernon* v. *Valk, supra,* which are antagonistic to the conclusions of Judge Johnson." In *McMullin* v. *Brown, supra,* one of the questions raised in the defense was, "whether the plaintiff's rights against the defendant are not barred by the statute of limitations?" The Court held that the statute of limitations will not run so as to protect a legatee against his liability to pay testator's debts until after the remedy has been exhausted against the executor—that no cause of action accrued against the heir or legatee until then. It appeared that the legatees had been in possession of their legacies from 1816 to 1817, and that the bill which was brought by the creditor of the testator against the legatees was not filed until 1829. It was held, however, that the suit had been brought in due time, as the cause of action did not arise until judgment had been recovered against the executor, and a deficiency of assets established, so as to enable the legacies to be followed. The case of *Lanier* v. *Griffin, supra,* referred to by Judge Gage, expressly reaffirms and corroborates this decision in *McMullin* v. *Brown.* The opinion was delivered by Mr. Chief Justice Willard, who used the following language: "It was held that the suit" (in *McMullin* v. *Brown*) "had been brought in due time; as the cause of action did not arise until judgment had been recovered against the executor, and a deficiency of assets established, so as to enable the legacies to be followed. In that case, the question whether the creditor was barred as against the legatee was considered independently of the question whether such a suit by the executor would have been so barred."

But, conceding that *Lanier* v. *Griffin* accords with *McMullin* v. *Brown,* Judge Gage says in his decree that the same Court of Appeals which rendered the decision in *McMullin* v. *Brown* laid down principles in *Vernon* v. *Valk* which are

antagonistic to the conclusions of Judge Johnson in the former case; and that, moreover, all of his conclusions were not sustained. The Circuit Judge does not set forth the antagonistic conclusions, nor does he indicate which of Judge Johnson's conclusions were not sustained.

A careful consideration and analysis of the decisions referred to fails to discover points of actual difference or of antagonism. Vernon's case was decided in March, 1835; McMullin's in December, 1836. The Court of Appeals that heard Vernon's case consisted of Judges Johnson, O'Neall and Harper. The Court of Appeals that decided McMullin's case was composed of Chancellors DeSaussure, Johnson, Harper and Johnston; and of Judges O'Neall, Gantt, Richardson, Evans, Earle and Butler. The report of McMullin's case shows that while Chancellor Johnston delivered the opinion of the Court, Chancellor Harper and Judge O'Neall concurred with the others in the decision. It thus appears that the same three learned Judges were of one mind in Vernon's case and in McMullin's case. It is not easy to believe, that, in so short a space of time and on a subject of so much importance, those three eminent men could have given their sanction to antagonistic opinions. There is one slight semblance of difference of opinion in those two cases. In *Vernon* v. *Valk,* we find Chancellor Harper saying this, with reference to the cases of *D'Urphey* v. *Nelson* and *Martin* v. *Latta:* "Notwithstanding our decisions that lands in the hands of the heir may be sold by an execution upon a judgment against the executor or administrator (decisions which, however much we may regret them, have yet obtained too long, and too many rights have been vested under them, to allow us to interfere with them), yet I suppose an action at law might be sustained against the heir alone. There is nothing in these decisions to forbid such an action. In such action, the executor neither would nor could be joined, and it would be immaterial whether there were an executor or administrator in the State or not." To understand clearly the full logical import of the learned

Chancellor's language, we must look into the facts of the case then before the Court. The bill shows that in Vernon's case there was no executor or administrator, and there were no personal assets in the State. A decree had been rendered in New York against the executrix, lately deceased. The Chancellor says: "It would be mere mockery that a formal administration should be taken out here, where there are no assets, in order that such formal administrator might be made a party." Keeping these facts in mind, there is no inconsistency between the decisions in Vernon's and McMullin's cases. It is always important to limit the scope of a decision to the special point presented in the case for adjudication. As to other questions not arising in the case, a decision is a mere *obiter dictum.* It would seem that Judge Gage gave the decision in *Vernon* v. *Valk* a larger meaning and a wider and more general application than Chancellor Harper and the concurring Justices intended. The Judge says in his decree: "The plaintiffs had the right to pursue the devisees independent of the executor, and whether the executor had assets or not. The reason of this is made plain by Chancellor Harper, in *Vernon* v. *Valk, 2* Hill Ch., 259, 260 and 261. If the plaintiffs had this right of pursuit, it accrued at that specific time when they held a past due obligation of the testatrix, and the defendants held property of the testatrix liable therefor." In this we cannot agree with Judge Gage, being of the opinion that he misunderstood the language and misapplied the doctrine of the decision in *Vernon* v. *Valk.*

The doctrine applicable to the case before us is that so plainly laid down in *McMullin* v. *Brown, supra,* and expressly reaffirmed in *Lanier* v. *Griffin, supra,* namely, that the statute of limitations will not run so as to protect a legatee against liability for his testator's debts until after the remedy has been exhausted against the executor—no cause of action accruing against him until that time. What is the true nature of the action at bar? It is not an action to recover from the defendants the amount of a debt due by their

devisor. It is not to establish a personal demand against them, for they cannot be held liable personally. It is simply an action to subject lands in the possession of the defendants as devisees to the payment of the debt of their devisor. In the apt language of the Circuit decree, "There can be no question that plaintiffs' cause of action consists in holding a valid debt against the testatrix and the possession by defendants as volunteers of property liable for the payment thereof." We may adopt and—to suit the facts in this case—adapt the language of Mr. Chief Justice McIver, in a somewhat similar case (*Cleveland* v. *Mills,* 9 S. C., 436), and say that this is an action to subject the lands of the debtor, Mrs. Taylor, in the hands of the defendants as devisees, to the payment of her debt; and it is founded upon the equity which creditors have to follow the assets into the hands of the heirs and devisees to obtain payment of their debt. The question, therefore, is not whether the defendants owe the debt—for there is no pretence that they ever did—but whether the testatrix ever owed it; not whether the right of action on the debt against the defendants is barred by the statute of limitations—for, strictly, there never was such a right of action—but whether the right of action against the testatrix or her executor is barred. "The only defense, therefore, that could avail the defendants would have been either to show that there was no such debt due by the testatrix, or that the action thereon against her executor was barred by the statute of limitations, which they might do, even though the executor should omit to interpose such a defense (*Bird* v. *Houze,* Sp. Eq., 250) ; or to show such *laches* on the part of the plaintiff as would deprive him of the right to invoke the equity powers of the Court, as in *Mobley* v. *Cureton,* 2 S. C., 140; or to have relied upon their own possession for the statutory period, as in *Miller* v. *Mitchell,* Bail. Eq., 437" (*Cleveland* v. *Mills, supra,* 437).

The comparatively recent case of *Ariail* v. *Ariail,* 29 S. C., 84, was not referred to or cited in the argument of the case at bar, but it was brought to our attention afterwards, in

accordance with the recognized practice in this Court.    It is
not surprising that counsel for the defendants should regard
Ariail's case as sustaining their view of the law, for some of
the views expressed in that case would seem at first sight to
be in conflict with the doctrine so distinctly laid down in
*McMullin* v. *Brown* and *Lanier* v. *Griffin*.    Mr. Chief Jus-
tice Simpson, who delivered the opinion of the Court, used
the following language: "The judgment against the execu-
tor then having no effect whatever upon the heirs or de-
visees, and it being necessary that plaintiff's cause of action,
if any, should be established against them in a suit to which
they are parties, as in the case below, we think they had the
right to set up any defense available at the time, including
the statute of limitations, without regard to the action
against the executor of their father in 1883, which in our
judgment did not arrest the currency of the statute com-
mencing in 1868.    Nor was it necessary to have a return of
*nulla bona* on said judgment before action accrued against
the devisees.    *Reener* v. *Speake,* 4 S. C., 295; *Lanier* v.
*Griffin,* 11 *Id.,* 582."    If the law here laid down be regarded
as a legal principle of general application, there is no doubt
that it would be in direct conflict with the decisions of our
Courts which we have already reviewed in this opinion, and
especially with the decisions in *McMullin* v. *Brown* and
*Lanier* v. *Griffin, supra.*.    But when the conclusions arrived
at in Ariail's case are limited in their application to the issues
actually involved in that case, the seeming conflict disap-
pears.    In that case, the Circuit Judge had held that the
claims of three of the plaintiffs were barred by the statute of
limitations.    "This question," says Chief Justice Simpson,
"which is the main and vital question in the case, depends
upon other subsidiary questions which his Honor considered
and decided, as involved in and leading up to this main ques-
tion.    They are, therefore, also before us.    These questions
are: first, was the settlement of John Ariail, made before the
ordinary of Pickens District in February, 1868, and his dis-
charge, an act throwing off his trust such as gave currency to

the statute? And, if so, second, did his Honor err in hold-
ing that the statute began to run as to each of the plaintiffs
as they reached their majority, respectively, and that each
was barred at the end of four years and nine months from
said majority, notwithstanding the action of said plaintiffs
against the executor of John Ariail in 1883, and judgment
thereon in May, 1885, for the sum of $1,450.70, and a return
of *nulla bona* made in July, 1885?" The Court affirmed the
conclusion of Circuit Judge Fraser, that the settlement and
discharge of John Ariail in 1868 was a disavowal of his trust
as administrator; that such disavowal necessarily gave cur-
rency to the statute; that the plaintiff's action against John
Ariail's executor in 1883 did not arrest the statute as to the
defendant's devisees, and give it a new starting point either
at the commencement of the said action or at the judgment
obtained therein in 1885. These important questions being
thus settled, the conclusion was unavoidable that the judg-
ment against the executor did not affect the devisees; that
the plaintiff's cause of action should be established against
them in a suit to which they were parties; that in such suit
the devisees had the right to set up any defense available at
the time, including the statute of limitations, without regard
to the action against the executor of their testator in 1883;
and that such action did not arrest the currency of the stat-
ute commencing in 1868. Up to this point there is not even
the appearance of conflict between the decision of the Court
in Ariail's case and the doctrines established in the leading
cases already referred to: *Vernon* v. *Valk; McMullin* v.
*Brown; Bird* v. *Houze; Lanier* v. *Griffin; Rogers* v. *Hug-
gins; Cleveland* v. *Mills; Huggins* v. *Oliver,* &c.

But the opinion in *Ariail* v. *Ariail* goes on to say: "Nor
was it necessary to have a return of *nulla bona* on the said
judgment before action accrued against the devisees." As
a general proposition, this is in obvious antagonism to the
rule laid down in *McMullin* v. *Brown,* and recognized in
several subsequent cases, namely, that the statute of limita-
tions did not run so as to protect a legatee or devisee against

his liability for his testator's debts until after the remedy has been exhausted against the executor—no cause of action accruing against him until then, for the sound reason that until the creditor has exhausted his remedy against the executor, or administrator, he cannot certainly know that the assets in the hands of the personal representative would prove insufficient (*McMullin* v. *Brown, supra*), or, indeed, that there were no assets in his hands. Was it the intention of the Court, in *Ariail* v. *Ariail,* to overrule *McMullin* v. *Brown,* and the other cases following in line? We do not think so. No mention is made of *McMullin* v. *Brown* in Ariail's case, nor of any desire to overrule or even to modify it. The importance of the law of property involved is too great and far-reaching to permit the supposition that the Court intended a result so serious, while giving no intimation of such intention.

When the facts in the case and the Circuit decree are considered, it is manifest that the Court was not looking beyond those facts, and the issues arising therefrom, when it announced that a return of *nulla bona* was not necessary before action accrued against the devisees. The report shows that it was admitted that there were no assets in the hands of Gary, the executor. Such an admission made it unnecessary to obtain a return of *nulla bona,* or to seek a remedy against the executor. That this is all that the Court meant, is made clear by an examination of the two cases cited by the Court—*Reeder* v. *Speake,* 4 S. C., 293, and *Lanier* v. *Griffin,* 11 S. C., 582. On the page referred to in the latter case is found the following: "If the executor has assets, or their deficiency has been occasioned by his wrong, the creditor must go against him in the first instance, and exhaust his remedy before he can go against the legatee, as was held in *McMullin* v. *Brown.*" And in *Reeder* v. *Speake,* we find this: "To require the creditor of a decedent to obtain return of *nulla bona* on an execution against the executor or administrator before he could call for an account in the court of equity, and claim its interference against the descended or

devised real estate, would exact a barren form productive of, and ending in, nothing but costs and expenses." From these two cases the Court very obviously concluded that in Ariail's case, in which it was admitted that there were no assets in the executor's hands, it would be futile and unnecessary to "exact the barren form" of obtaining a return of *nulla bona*. It will be remembered that in *Vernon* v. *Valk, supra,* Chancellor Harper held, for somewhat similar reasons, that where there was no executor or administrator and no assets in this State, "it would be mere mockery that a formal administration should be taken out here, where there are no assets, in order that such formal administrator might be made a party;" and that, therefore, the creditor in such a case might bring his action against the heir alone. So that, also, it might well be said that it would be mere mockery to exact a return of *nulla bona,* when it is admitted that the executor has no assets. And this is all that the Court meant when it said in Ariail's case, that "it was not necessary to have a return of *nulla bona on said judgment* against the executor before the action accrued against the devisees." Regarded as the law in Ariail's case and applied to the facts involved and the issues raised, this is a sound proposition. But if it is to be regarded as a principle or rule of general applicability, we do not hesitate to say that it is in irreconcilable conflict with the important doctrines established with so much care, labor and learning, in the leading cases we have passed under review and recognized in a long line of subsequent decisions. The former view is, in our opinion, the reasonable exposition of the law in *Ariail* v. *Ariail.* If we could regard the latter as the reasonable view, this Court would without hesitation overrule that case so far as the point in question is concerned. But we do not think it necessary to take that step, being of the opinion that the doctrine laid down in that case is not out of harmony with the decisions in the leading cases to which we have so frequently referred.

In *Huggins* v. *Oliver,* 21 S. C., 159, to which we have

already referred, Mr. Chief Justice McIver, after a very thorough and discriminating review of the leading cases, makes much easier the understanding and application of this important law of property by laying down the following rule: "It seems to us that the rule to be deduced from the foregoing cases is this: that while, as a general proposition, it is true that lands of an intestate may be sold under a judgment recovered against the administrator upon a debt of the intestate, yet if the lands have passed into the actual and exclusive possession of the heirs before the judgment has been recovered, and before any lien has thus been fixed upon them, they can no longer be sold *under such judgment,* and can only be reached by the usual proceedings to subject real estate in the hands of the heir to the payment of the debts of the ancestor—to which proceedings the heir would, of course, be a necessary party. Without this qualification of the general rule stated in *D'Urphey* v. *Nelson,* it would be impossible to reconcile the various decisions to which we have referred, but with it the cases may all be harmonized."

We cannot do better than again announce this excellent rule as the logical result of the numerous decisions on this vexed question. The doctrine which the rule embodies is clearly indicated in *Gilliland & Howell* v. *Caldwell,* 1 S. C., 198. That case has the following: "The statute of George II. does not make descended lands in the possession of the heirs liable for the payment of the debts of the ancestor, but the cause of action must be established against them in a suit to which they are parties, and they are not bound by a judgment against the administrator to which they are neither parties nor privies."

When the principle deduced from the cases we have reviewed are applied to the facts in this case, it will easily be seen that the judgment recovered by the plaintiffs against the executor in March, 1895, does not bind the defendants, and the lands in their hands as devisees cannot be sold under that judgment. They were not parties to that suit and thus had no opportunity to dispute the claim. Although the

claim was sued to judgment, that fact does not give it any higher rank or greater effect, in so far as the defendants are concerned. As to them it is not *res judicata.* And when, as in this case, the judgment is made the basis of an action to obtain a decretal order to sell the lands in their hands as devisees to pay the debt of their testatrix, they have the right to contest the claim as freely as if it had not ripened into a judgment. They may, as we have already shown, set up the defense that it was not a valid debt against their testatrix, or they may plead *laches* or any other good defense. They may plead the statute of limitations as running in their favor in a proper case.

But in this case the statute did not begin to run when the plaintiffs held a past due obligation of the testatrix and the defendants held lands devised and liable therefor, as was held by Judge Gage. The statute began to run only after the remedy against the executor had been exhausted. The judgment was recovered in March, 1895, execution issued and *nulla bona* returned thereon. This action was commenced in April, 1899, only four years after the remedy against the executor had been exhausted. It is clear, therefore, that the statute of limitations could not properly be set up as a defense by these defendants, and that the plaintiffs' first ground of demurrer directed against that defense should have been sustained; and that it was error in the Circuit Judge to overrule it.

It is the judgment of this Court, that the decree of the Circuit Judge herein be reversed, in so far as it overruled the plaintiffs' first ground of demurrer; and that in all other respects the judgment of the Circuit Court be affirmed, except as to the right of homestead, which was left open by the Circuit Judge, and that the case be remanded to the Circuit Court for the purpose of hearing and determining the claim of homestead, with leave to the defendants to apply to that Court for such amendments to their answer as may be deemed necessary to bring before the Court all such facts as may be pertinent to the claim of homestead.