TRIMBLE et al. v. RICE et al.

(Circuit Court of Appeals, Fourth Circuit.   February 12, 1913.)

No. 1,108.

1. EXECUTORS AND ADMINISTRATORS (§ 386*)—SALE OF LAND TO PAY DEBTS—PARTIES—REMAINDERMEN.

Testator, having charged his debts on other property, devised certain real estate to his two sons for life, and for the life of the survivor, with remainder to their legitimate issue, or the legitimate issue of the one having issue, and on failure of issue over to surviving brothers and sisters of the whole blood in fee, but provided that, if the property charged with the payment of debts should be insufficient, the proceeds of the land devised to his sons should be used therefor.   *Held*, that a sale of the land devised to the sons to pay debts, after possession had been delivered to them in proceedings in which the court acquired no jurisdiction of the remaindermen, some of which were then in being, did not bar their rights in the property.

[Ed. Note.—For other cases, see Executors and Administrators, Cent. Dig. § 1570; Dec. Dig. § 386.*]

2. EXECUTORS AND ADMINISTRATORS (§ 332*)—LAND SPECIFICALLY DEVISED—SALE TO PAY DEBTS—STATUTES.

Section 4 of the statute of George II, providing for the sale of lands of a deceased person to pay debts, does not make the descended or devised lands in possession of the heirs or devisees liable for the debts of the ancestor, except where the cause of action has been established against them in a suit to which they are parties; they being not bound by a judgment against the executors or administrators to which they are neither parties nor privies.

[Ed. Note.—For other cases, see Executors and Administrators, Cent. Dig. §§ 1369–1371; Dec. Dig. § 332.*]

3. WILLS (§ 608*)—DEVISES—RULE IN SHELLEY'S CASE.

A devise of certain land to testator's two sons during their natural lives, or the survivor of them, then to their legitimate issue, or to the legitimate issue of the son having such issue, whether the son be living or deceased, and on failure of issue then to testator's surviving brother or sister of the whole blood, did not vest in the sons a fee under the rule in Shelley's Case.

[Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 1372–1378; Dec. Dig. § 608.*]

In Error to the District Court of the United States for the District of South Carolina, at Greenville; Henry A. M. Smith, Judge.

Ejectment by Mary R. Trimble and others against W. G. Rice, Jr., and another.   Judgment for defendants, and plaintiffs bring error. Reversed.

Two ejectment suits were instituted in the United States District Court for the District of South Carolina by Mary Trimble and others, children of Willis Boyd and William Downs Calhoun, late of that state, against one W. G. Rice and the Coronaca Oil Mill.   These suits, being in all respects identical, except as to the defendants and the particular land sued for, were heard together by order of the court and consent of parties, the judgment in one to abide that of the other.   The facts are as follows:

Downs Calhoun was a planter, living in Abbeville district, of South Carolina, and in 1842 he made his will, by the seventh clause of which he gave his two sons, Willis Boyd and William Downs Calhoun, above named, certain land for life and for the life of the survivor, with remainder to their legitimate issue or the legitimate issue of the one having issue, and, on fail-

ure of such issue, over to the surviving brothers and sisters of the whole blood in fee simple forever. The life tenants died, one of them in February, 1872, the other on the 30th of April, 1901, both leaving children who were the plaintiffs below. This suit was commenced April 22, 1907, and is for parts of the land so devised.

The testator, Downs Calhoun, died in 1850, and his will was duly probated prior to the 9th day of July of that year, and his executor, Nathan Calhoun, a brother of the deceased and an uncle of the life tenants, was nominated as executor, and at once qualified and took upon himself the duties of his office. The deceased had when he died but one farm, on which there were two dwellings, in one of which he resided. At the death of the testator the said sons "were placed and·went into the exclusive possession" of said lands devised to them, which they divided between themselves, and continued in exclusive possession of the same until they sold out and emigrated to Alabama and Mississippi, respectively, in 1855 and 1857. The title of the defendants was derived through mesne conveyances made by Willis B. and William Downs Calhoun between 1855 and 1857, at or about which time the Calhouns removed from the land and from the state of South Carolina. By clause 10 of the will the testator charged his debts, if any, against property not devised, and in the eleventh clause of the will, in case there should be any deficiency in the proceeds of the property specially charged with ·debts, he said: "I then charge the estate of my two sons, Willis Boyd Calhoun and William Downs Calhoun, herein devised to them, with the payment of all my just debts, or such balance of my debts which remain unpaid after exhausting the residuary real and personal estate herein set apart for that and other purposes herein expressed."

To show the character of the possession of the life tenants of the identical lands devised, and sued for, the complainants introduced a deed the life tenants had procured to be made to themselves, as alleged, through invalid proceedings wherein the lands are described in the words of the will itself, as "the Long tract, the Davis tract, the Busby tract, the Bartrum tract, the Caldwell tract, and the Steward tract." The complainants also introduced the proceedings of the court under which the deed was made, for the purpose of showing that it was founded on an ex parte petition by the executor in the court of equity, on which an order was made to inquire "if the statements of the petition are true, and if the devisees of the land described in the petition consent to a sale thereof," dated June 13, 1853. The next and only other entry was dated June 16, 1853, reciting a reference. to inquire and report if these lands be required to be sold for the payment of debts (which order of reference is nowhere shown), and reciting a report that such sale is necessary, and directing the tract of land mentioned in the seventh clause of the will to be sold, proceeds of such sale to be paid to the executor so far as necessary, balance to be paid in equal proportion to said defendants," etc.

The record further shows a report of the commissioner that he sold the land in October, 1853, to W. D. Calhoun and W. B. Calhoun for $2,900, and executed a deed to them for the same. This is all that is affirmatively shown ever to have existed—though it is admitted that there was a fire in 1873 that consumed all other or further record, if there was any. The will was also in evidence.

At the conclusion of the plaintiffs' proofs the court ex mero motu directed verdicts for defendants; the latter offering no proofs. The plaintiffs excepted to the ruling of the court, and the case is here on writ of error.

W. A. Gunter, of Montgomery, Ala., and A. L. Gaston, of Chester, S. C., for plaintiffs in error.

J. B. Park and F. B. Grier, both of Greenwood, S. C. (Grier, Park & Nicholson, of Greenwood, S. C., on the brief), for defendants in error.

Before GOFF and PRITCHARD, Circuit Judges, and ROSE, District Judge.

PRITCHARD, Circuit Judge (after stating the facts as above). The learned judge who tried this case, before instructing the jury in favor of the defendants below, made the following statement:

"These are two cases, brought by Mary R. Trimble and others, one against the Coronaca Oil Mill, and the other against W. G. Rice, Jr. It is admitted by all parties that the question is a legal one, depending upon the validity of a sale made in 1854. I charge you that the rights of the plaintiffs in these cases to recover depends upon the validity of the sale made by order of the court of equity for the district of Abbeville in 1853, and of the decree made by that court, the deed being dated the 22d of May, 1854.

"I charge you as a matter of law that that deed is a valid instrument; that, although many of the records are lost or destroyed, everything must be presumed to have been validly done at the time; that all the proper parties who should have been before the court according to the practice of the then existing court were before it, together with the subject-matter; and that it had jurisdiction of the subject-matter of the action. The order for sale or decree for sale which was made was, therefore, a valid decree, and the sale and deed made in pursuance of it was a good sale and deed, and passed title to this property, and the plaintiffs are, therefore, bound thereby, and not entitled to recover; so you will write on these complaints, 'We find for the defendants the property in dispute.'"

[1] It is insisted by counsel for the plaintiffs below that the chancery court, in which that proceeding was instituted and upon which the deed of defendants, as well as those under whom they claim, were based, was without jurisdiction to pass upon the rights of the remaindermen, who were not made parties to that suit. There was evidence introduced to the effect that the complainant, Edwin Calhoun, remainderman under the will, was born June 9, 1850, and was living with his father, Downs Calhoun, on said land, at the time the chancery suit was instituted by virtue of which this land was sold. The first question to be determined is as to whether, under the laws of South Carolina, such remainderman should have been made a party to that suit in order to give the court jurisdiction to pass upon his rights. An examination of the record discloses the fact that only W. B. and W. D. Calhoun were made parties to that proceeding. The caption of the report of H. H. Jones, commissioner, is in the following language:

"Nathan Calhoun, Executor, v. W. B. and W. D. Calhoun."

The deed executed in pursuance of that suit, among other things, contains the following recital:

"Whereas, Nathan Calhoun, executor of the last will and testament of Downs Calhoun, deceased, on or about the 11th day of June, 1853, did exhibit his petition in the court of equity, in the district of Abbeville, and state aforesaid, against Willis B. Calhoun and William D. Calhoun, for the sale of certain real estate of which Downs Calhoun, late of Abbeville district, died seised and possessed."

While it is contended that a portion of the record in this proceeding was destroyed by fire, nevertheless it affirmatively appears from the papers now on file that W. B. and W. D. Calhoun were made parties to that suit; but it nowhere appears that the remainderman, Edwin Calhoun, was made a party. If there had been found in the record an order or decree containing a recital to the effect that Edwin Calhoun, remainderman, was a party, it would have been a circum-

stance from which it might have been inferred that he had been made a party to such suit; but, as we have stated, no such paper was found. Nor does it appear that a summons was ever issued for the purpose of making the said Edwin Calhoun a party thereto. The two papers to which we have referred were essential parts of the proceeding. This is especially true of the deed executed by the commissioner, wherein the recital shows that only the life tenants were made parties, notwithstanding the fact that the remainderman had the larger estate and was as necessary a party as the life tenants.

It appearing that the court was without jurisdiction for want of proper parties, it could not pass upon the rights of the remainderman, unless there be some ruling of the Supreme Court of South Carolina to the contrary.

It should be borne in mind that it was provided in item 10 of the will that all the real and personal estate of the testator not devised thereby should be sold by the executor upon such terms as he might deem best and proper for the benefit of the devisees, and the proceeds of the same should be applied to the settlement of all just debts against said estate. Therefore it will be seen that, at the time the life tenants went into possession of this property, such property was not specially charged with the payment of the debts of the testator, because other provisions had been made for that purpose. And the provisions of item 11 of the will were to be effective only in the event that the property set aside for the payment of the debts of the testator should prove to be insufficient to pay the same.

As we have stated, the life tenants were in possession of the premises at the time the chancery suit was instituted, and it also appears that Edwin Calhoun, remainderman, was living on these lands with his father.

[2] Counsel for the defendants claim that under the fourth section of the statute of George II these lands could be sold under an ex parte proceeding. The section in question is in the following language:

"And from and after the said twenty-ninth day of September, in the year of our Lord one thousand and seven hundred and thirty-two, the houses, lands, negroes and other hereditaments and real estates, situated or being within any of the said plantations belonging to any person indebted, shall be liable to and chargeable with all just debts, duties and demands, of what nature or kind so ever, owing by such person to his majesty, or any of his subjects, and shall and may be assets for the satisfaction thereof, in like manner as real estates are by the laws of England liable to the satisfaction of debts due by bond or other specialty, and shall be subject to the like remedies, proceedings and process, in any court of law or equity, in any of the said plantations respectively for seizing, extending or disposing of any such houses, lands, negroes, and other hereditaments and real estates, towards the satisfaction of such debts, duties and demands, etc., in like manner as personal estates in any of the said plantations respectively are seized, extended, sold or disposed of, for the satisfaction of debts."

In this instance, it appears that the executor permitted the devisees to enter into the exclusive possession of these premises at a time when, according to the provisions of the will, there were no debts, and, if there had been any debts, the life tenants were bound to pay

the same. The Supreme Court of South Carolina has passed upon this question in the case of Brock v. Kirkpatrick, 60 S. C. 322, 38 S. E. 779, 85 Am. St. Rep. 847. In construing the statute of George II, the court, among other things, said:

"In Huggins v. Oliver, 21 S. C. 159, Mr. Chief Justice McIver, after a very thorough and discriminative review of the leading cases, * * * lays down the following rule: 'That while, as a general proposition, it is true that lands of an estate may be sold under a judgment recovered against the administrator upon a debt of the intestate, yet if the lands have passed into the actual and exclusive possession of the heirs before the judgment has been recovered, and before any lien has thus been fixed upon them, they can no longer be sold under such judgment, and can only be reached by the usual proceedings to subject real estate in the hands of the heir to the payment of the debts of the ancestor, to which proceedings the heir would, of course, be a necessary party. Without this qualification of the general rule stated in De Urphey v. Nelson [1 Brev. (S. C.) 289], it would be impossible to reconcile the various decisions to which we have referred, but with it the cases may all be reconciled.' We cannot do better than announce this excellent rule as the logical result of the numerous decisions on this vexed question. The doctrine which the rule embodies is clearly indicated in Gilliland v. Caldwell, 1 S. C. 198. The statute of George II does not make the descended lands in *possession of the heirs* liable for the payment of the debts of the ancestor; but the cause of action must be established against them in a suit to which they are parties, and they are not bound by a judgment against the administrators to which they are neither parties nor privies."

The forgoing decisions of the Supreme Court of South Carolina constitute a rule of property, and we are bound thereby. Such being the case, we are impelled to the conclusion that the lower court erred in directing a verdict in favor of the defendants.

[3] Counsel for defendants insist that the rule in Shelley's Case applies to the case at bar, and that the so-called life tenants by virtue of such rule were the owners in fee simple of the premises. The provision of the will devising this land was in the following language:

"I give and devise to my two sons, Willis Boyd Calhoun and William Downs Calhoun, during their natural lives, or the survivor of them, the following tract of land, containing five hundred and eighty acres, more or less. * * *"

The testator then described such land, and added:

"I give to my said two sons, Willis Boyd Calhoun and William Downs Calhoun, during their natural lives and no longer, and to the survivor during his life and no longer, and after the death of my said sons or either of them, then to their legitimate issue or to the legitimate issue of the son having such issue, whether the said son be living or deceased. On failure of such legitimate issue of my said sons or either of them, then I give the said tract of land of five hundred and eighty acres of land, more or less, to the surviving brother and sisters of the whole blood in fee simple, forever."

The court below was evidently of the opinion that the rule in Shelley's Case did not apply, and, after a careful consideration of the decisions of the Supreme Court of South Carolina, we are of the same opinion.

For the reasons stated, the judgment of the lower court is reversed, and the case remanded for further proceedings in accordance with the views herein expressed.

Reversed.